**AFSCME/IOWA COUNCIL 61 and the Estate of Tom Gott, Appellees,**

v.

**IOWA DEPARTMENT OF PUBLIC SAFETY and Dr. Thomas Bennett, State Medical Examiner, Appellants.**

No. 87–1735.

Supreme Court of Iowa.

Dec. 21, 1988.

Thomas J. Miller, Atty. Gen., and Gary L. Hayward, Asst. Atty. Gen., for appellant.

Michael E. Hansen, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

Defendants, the Iowa Department of Public Safety (DPS) and the state medical examiner, Dr. Thomas Bennett, appeal the district court order granting summary judgment to plaintiff, Estate of Tom Gott, in this mandamus action under Iowa Code chapter 22 (1987), the Iowa Public Records Act. The estate and Gott's union, the American Federation of State, County and Municipal Employees (AFSCME), Iowa Council 61, also a plaintiff, cross-appeal the district court order denying summary judgment to AFSCME. We affirm in part, reverse in part, and remand.

I

On April 13, 1987, the State obtained a nontestimonial identification order for a blood sample to be taken from Tom Gott, an officer at the correctional institution for women at Mitchellville, Iowa. The order, obtained pursuant to Iowa Code chapter 810, was based on the allegation by an inmate, Teresa Cline, that Gott had sexually abused her on the night of March 14, 1987. The purpose of the order was to compare Gott's blood type with the blood type of a semen stain found on Cline's bedding. Pursuant to the order, Gott was required to report to Charter Hospital in Des Moines on April 17 at 11:00 a.m.

On April 14, 1987, Gott was discharged from his position at the correctional institution as a result of Cline's allegation. He was reportedly despondent for the next several days. On the morning of April 17, when the blood tests were scheduled, Gott left his home in Mitchellville and drove to a nearby park, where he fatally shot himself in the head. Although no autopsy was performed on Gott, the medical examiner's office obtained a blood sample from Gott's body. This sample was turned over to the Department of Criminal Investigation (DCI), which proceeded to perform the tests for which the chapter 810 order was obtained. In a subsequent application by the State for a blood sample from another correctional officer, Tracy Conner, it was disclosed Gott's blood type did not match that of the stain on Cline's bedding. The lab reports themselves, however, were not and have not been made public.

On June 17, 1987, AFSCME requested Dr. Bennett to send it "copies of all reports concerning any blood tests and blood comparisons" run on Gott. AFSCME considered these reports necessary for its prosecution of the grievance concerning Gott's discharge. On July 7, 1987, AFSCME sent a similar letter to the DPS. This letter also requested production of the reports on behalf of Gott's estate. The response of Dr. Bennett, through counsel, was that the lab reports were confidential investigative records, which were not subject to examination upon request. Dr. Bennett later stated he had not been involved in the Gott investigation and, as a result, had never had custody of the records requested. The response of the DPS, the acknowledged custodian of the lab reports at issue, was also that the records requested were confidential investigative records.

In response, AFSCME and Gott's estate filed this action on July 24, 1987, for a writ of mandamus, pursuant to Iowa Code section 22.5. All parties thereafter moved for summary judgment. The district court granted the motion of Gott's estate, but

denied the motions of all of the other parties.

## II

Summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). The burden of showing the nonexistence of a material fact is upon the moving party. *Colonial Baking Co. v. Dowie*, 330 N.W.2d 279, 282 (Iowa 1983).

### A

■ The district court granted summary judgment to Gott's estate as against Dr. Bennett, as well as the DPS. However, our review of the record reveals a genuine issue of fact regarding whether Dr. Bennett was ever involved in the Gott investigation or had custody of the lab reports at issue. We conclude summary judgment as against him was inappropriate.

### B

The record does not reveal a genuine issue of fact regarding the involvement of the DPS, Gott's estate, and AFSCME in this case. Resolution of the appeal by the DPS and of the cross-appeal by Gott's estate and AFSCME therefore depends on our interpretation of the relevant sections of Iowa Code chapters 22 and 810.

It is not disputed the lab reports at issue are "public records," as defined by Iowa Code section 22.1:

"[P]ublic records" includes all records, documents, tape, or other information, stored or preserved in any medium, of or belonging to this state or any county, city, township, school corporation, political subdivision, or tax-supported district in this state, or any branch, department, board, bureau, commission, council, or committee of any of the foregoing.

The question is whether they are exempt from disclosure to Gott's estate or AFSCME by virtue of Iowa Code section 22.7, which provides in pertinent part:

The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:

. . . .

5. Peace officers' investigative reports, except where disclosure is authorized elsewhere in this Code.

Iowa Code § 22.7(5) (1987).

■ The first issue to be resolved in this regard is whether the lab reports are "investigative reports," as is asserted by the DPS. We are persuaded they are. There is no dispute the analysis of Gott's blood was made as part of the investigation of Cline's allegation of sexual abuse. We believe this fact is sufficient to qualify the lab reports as "investigative reports."

■ The next issue to be resolved is the proper interpretation of the subsection's phrase, "except where disclosure is authorized elsewhere in this Code." Iowa Code § 22.7(5). The DPS contends this phrase refers only to provisions elsewhere in the Code that provide for disclosure to the general public and not to provisions that provide for disclosure limited to specific persons or organizations. Gott's estate asserts it has a right to the lab reports under section 810.15, which provides:

Within ten days after the nontestimonial identification procedure, the order shall be returned to the issuing court. The court, the prosecuting attorney, and *the person who was the subject of the order* shall be furnished with a written report of the results of any tests or comparisons utilizing the evidence obtained in the authorized procedures. This report shall be disclosed promptly after it becomes available unless the court directs that disclosure be delayed. [Emphasis added.]

Gott's estate contends this section constitutes the requisite "disclosure . . . authorized elsewhere" in the Code. AFSCME asserts that if any type of disclosure is authorized elsewhere in the Code, such as to Gott's estate under section 810.15, section 22.7(5) requires disclosure of the lab

reports to AFSCME or to anyone who requests them.

Our interpretation of sections 22.7(5) and 810.15 is guided by the following well-settled principles. Our goal in construing statutes is to ascertain legislative intent. We consider the spirit of the statute as well as the words, so that a sensible, workable, practical, and logical construction is given. *Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985); *Hansen v. State*, 298 N.W.2d 263, 265–66 (Iowa 1980). In doing so, we take account of the object sought to be accomplished and the problems sought to be remedied by the statute, and arrive at a construction that will best effect its purpose. *Shell Oil Co. v. Bair*, 417 N.W.2d 425, 428 (Iowa 1987); *Shidler v. All American Life & Fin. Corp.*, 298 N.W.2d 318, 321 (Iowa 1980). When more than one statute is pertinent to the inquiry, as here, we consider the statutes together in an attempt to harmonize them. *State v. Bessenecker*, 404 N.W.2d 134, 137 (Iowa 1987); *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 376 N.W. 2d 878, 881 (Iowa 1985).

We have previously stated the exemptions of section 22.7

> are narrowly tailored to specific circumstances in which the public interest would not be served by disclosure of information contained in the records and in which disclosure could cause substantial adverse impact upon an individual. The exemptions are thus applicable only within the framework of "every citizen's" *general* right to examine public records under chapter [22].

*Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981) (discussing the predecessor statute of chapter 22). In that case, the commission did not seek inspection of the records at issue as a "citizen" under the public records act; instead, inspection was sought pursuant to the agency's statutory investigative and subpoena powers. Accordingly, the exemptions to disclosure did not apply to the agency's subpoena *duces tecum. Id.*

Analogously, Gott's estate sought inspection in this case not as a general right of citizenship, but rather under a right allegedly granted by section 810.15. AFSCME, however, sought inspection as a general right, but relied on the alleged section 810.-15 right of Gott's estate to overcome the exemption of section 22.7(5). We believe a reasonable interpretation of the language of section 22.7(5) should take into account the different bases for these parties' claims under chapter 22. Accordingly, we read the language in section 22.7(5) regarding "disclosure ... authorized elsewhere" in the Code as referring to disclosure to the party seeking inspection. Thus, Gott's estate could obtain copies of the lab reports if it could establish a right to those copies under section 810.15. AFSCME, which could not establish such a right, is precluded from obtaining the copies it sought. The district court therefore was correct in denying the summary judgment motion of AFSCME.

### C

■ The DPS contends the court erred, however, by granting Gott's estate summary judgment against it. The DPS asserts Gott's estate had no right to the lab reports under section 810.15 because Gott himself had no right thereto, as a result of the blood sample being procured after his death. In the alternative, the DPS asserts any right Gott had was personal to him and did not pass to his estate.

On April 13, 1987, the State obtained the chapter 810 order for the nontestimonial identification blood test procedure. There is no factual support for the DPS's assertion that Gott's death on April 17 terminated this procedure. No autopsy was performed on Gott, yet the DCI was somehow able to obtain a sample of his blood. The lab tests thereafter performed were those anticipated by the April 13 order. It is apparent the chapter 810 procedure was completed despite Gott's death.

There is no question Gott had a right to "a written report of the results of any tests or comparisons utilizing the evidence obtained" in this procedure. *See* Iowa Code § 810.15. The question is whether this right survived his death. Iowa Code sec-

tion 611.20 provides: "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." However, where the subject matter of the controversy is personal to the decedent, the cause of action does not survive. *Cf. State ex rel. Turner v. Buechele*, 236 N.W.2d 322, 324 (Iowa 1975) (discussing abatement of civil action under section 686.17 upon death of a defendant). The DPS believes *Buechele* is controlling here.

In *Buechele* the defendant appealed a trial court ruling ordering him removed from office as a Worth County supervisor. Before the appeal could be decided on the merits, the defendant died. We stated, "[t]he right to hold office is generally considered personal so that the death of the office holder on appeal in a removal action abates the proceeding." *Buechele*, 236 N.W.2d at 324. We rejected the argument that Buechele's claim for salary, which might be an interest of his estate, would be affected by our dismissal of his appeal. This was due to our holding that "[n]either our conclusion nor the judgment of the district court shall prejudice Buechele's personal representative in any action upon such a claim." *Id.* at 325.

This case raises a similar issue in that Gott's estate is, in other litigation, pursuing his claim for wrongful discharge, and seeks to prevail in this action in order to further that claim by use of the lab reports. In this case, however, we do not have the luxury of declaring that our decision shall not prejudice the rights of Gott's personal representative; it clearly will if we determine Gott's section 810.15 right did not survive his death. Also, in *Buechele* the dominant issue, whether the county supervisor should be removed from office, was mooted by his death. In the instant case, issues surrounding the investigation of an alleged crime and Gott's being removed as a correctional officer were not mooted by his death. We conclude *Buechele* is inapplicable and that section 611.20 is controlling. Gott's estate could assert Gott's section 810.15 right as an exception to the exemption in section 22.-7(5). The district court did not err by

granting Gott's estate summary judgment as against the DPS.

## III

Finally, there is some confusion concerning the scope of the court's summary judgment order. The DPS suggests the order requires it to mail copies of the lab reports to Gott's estate, in contravention of the dictates of sections 22.2 and .3. Although we are not convinced the district court order exceeded the scope of remedies available under chapter 22, we take this opportunity to clarify what is required of the DPS in this case. The DPS is clearly not required to send Gott's estate a written report of the lab results, as would be required under section 810.15. Gott's estate chose to pursue the remedies available to it under chapter 22 and not those under chapter 810. Section 810.15 is important to this case because it provided a place elsewhere in the Code where disclosure of the lab reports to Gott's estate was authorized, allowing the estate to satisfy the exception to the exemption of section 22.7(5).

Section 22.2 gives Gott's estate the right to examine and copy the lab reports at issue. Section 22.3 provides:

Such examination and copying shall be done under the supervision of the lawful custodian of the records or the custodian's authorized deputy. The lawful custodian may adopt and enforce reasonable rules regarding such work and the protection of the records against damage or disorganization. The lawful custodian shall provide a suitable place for such work, but if it is impracticable to do such work in the office of the lawful custodian, the person desiring to examine or copy shall pay any necessary expenses of providing a place for such work. All expenses of such work shall be paid by the person desiring to examine or copy. The lawful custodian may charge a reasonable fee for the services of the lawful custodian or the custodian's authorized deputy in supervising the records during such work. If copy equipment is available at the office of the lawful custodian of any public records, the lawful custodi-

an shall provide any person a reasonable number of copies of any public record in the custody of the office upon payment of a fee. The fee for the copying service as determined by the lawful custodian shall not exceed the cost of providing the service.

Thus, Gott's estate shall be allowed to examine and copy the lab reports in the office of the DPS or such other suitable place. The additional requirements of section 22.3, concerning copying services and expenses, shall also be adhered to.

We have examined all of the other contentions of the parties and find them without merit. To summarize, we affirm the district court's grant of summary judgment to Gott's estate as against the DPS and the denial of summary judgment to AFSCME. We also affirm the court's rulings regarding attorney fees and fines. We reverse the district court's grant of summary judgment to Gott's estate as against Dr. Bennett. We remand for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.