Barbara J. HAMMER, Janice E. Drury, and the Iowa Nurses' Association, A Representative Organization On Behalf of Themselves and All Others Similarly Situated, Appellees,

v.

Terry E. BRANSTAD, Governor of the State of Iowa; State of Iowa; Iowa Department of Human Services; State Department of Health n/k/a Iowa Department of Public Health; Iowa Board of Nursing; Iowa Department of Corrections; Iowa Merit Employment Department n/k/a Department of Personnel; and Thomas Donahue, Director of Merit Employment n/k/a Director of Department of Personnel, Appellants.

No. 89–346.

Supreme Court of Iowa.

Nov. 21, 1990.

Thomas J. Miller, Atty. Gen., and Julie F. Pottorff, Asst. Atty. Gen., for appellants.

Becky S. Knutson of Sayre & Gribble, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and LAVORATO, JJ.

CARTER, Justice.

The Governor and affected State agencies, who are defendants in a class action by state employees seeking alleged wage entitlement, have appealed with permission from orders certifying the members of the plaintiff class and granting plaintiffs' motion for summary judgment on the liability issues.

Plaintiffs Barbara Hammer and Janice Drury are nurses employed by the State of Iowa. The plaintiff Iowa Nurses' Association is a voluntary membership association formed as an Iowa nonprofit corporation for the support and benefit of nurses generally. These plaintiffs challenge the validity of the Governor's June 4, 1985, executive order adjusting the salary upgrades made by the Department of Personnel in attempting to carry out the comparable worth mandates of 1984 Iowa Acts chapter 1314. They seek to recover back pay, interest, attorney fees, and costs under Iowa Code chapter 91A (1989) and general contract law.

The two issues presented on appeal are (1) whether the named plaintiffs are representative of the class of allegedly aggrieved employees; and (2) whether the district court erred in determining that the Governor's June 4, 1985, executive order adjusting the comparable worth upgrades of certain employees was violative of the comparable worth enabling legislation. After considering the arguments of the parties and reviewing the record on appeal, we modify the district court's order with respect to establishing the class representatives but otherwise affirm the action taken by that court.

Under legislation in force at the times material to this litigation, the salary structure for state employees was tied to established pay grades. A salary range was established for each pay grade. In 1983, the State conducted a comparable worth study which resulted in factored scores being assigned to particular job titles. Job titles were determined by combining positions sufficiently similar in duties and responsibilities that each position required the same minimum qualifications and could

be filled based on substantially the same test of ability or fitness.

Pursuant to legislation enacted in 1984 Iowa Acts chapter 1314 (hereinafter referred to as Senate File 2359) job titles were assigned to the established pay grades in accordance with these factored scores. Section 3(2) of Senate File 2359 provided, in part, that "[i]n implementing the first phase of comparable worth adjustments, employees whose pay grades will be increased shall retain their merit step positions when those adjustments are made." Most nurses employed by the State were increased several pay grades by virtue of the implementation of the first phase of comparable worth adjustments.

Implementation of the comparable worth adjustments under Senate File 2359 required that there be a downgrading of salary range for some employees. Prior to June 4, 1985, those state employees who were under a bargaining agreement bargained for no salary downgrading for any members of the bargaining unit in exchange for sacrificing a portion of the upward adjustments due bargaining unit employees. The legislature thereafter acted to restore the salary position lost by any employee downgraded under comparable worth, effective with the first pay period for fiscal year 1988. 1985 Iowa Acts ch. 152, § 4. As applied to nonbargaining employees, this legislation, which antedated the executive order challenged by plaintiffs, did not tie the reversal of comparable worth downgrading to an adjustment of the comparable worth upgrading received by that category of employees.

The Department of Personnel acted to implement the comparable worth salary adjustments resulting from Senate File 2359. After this action was taken, the Governor, on June 4, 1985, issued an executive order requiring that all professional merit employees not subject to collective bargaining agreements, who had been placed in a higher pay grade by the comparable worth adjustments, be reduced one step from each employee's newly established merit pay position. This directive was qualified by a provision that no employee's salary would be adjusted below the minimum salary for the applicable pay grade.

On November 7, 1988, the district court entered an order certifying the members of the plaintiff class. It also determined that trial of the case should be bifurcated with liability to be determined before damages. The parties then filed cross-motions for summary judgment.

In an order entered February 15, 1989, the district court granted plaintiffs' motion for summary judgment. It concluded that the June 4, 1985, executive order was in contravention of the language in section ·3(2) of Senate File 2359, providing that employees "shall retain their merit step positions." The court directed that the case proceed to the damage stage wherein those nurses aggrieved by pay reductions pursuant to the June 4, 1985, executive order be awarded back pay, interest, attorney fees, and costs.

We granted the defendants' application to appeal in advance of final judgment from the February 15, 1989, order and from the November 7, 1988, order certifying the class. Other facts and circumstances which bear on the disposition of this appeal will be set forth in our discussion of the legal issues presented.

## I. *Appealability of November 7, 1988, Order Certifying the Class.*

Before considering the merits of defendants' challenge to the class representatives, we must deal with a procedural point raised by plaintiffs. They contend that this court was not empowered to grant an interlocutory appeal from the November 7, 1988, order on class certification when application to appeal was not filed until March 7, 1989. They base this argument on two grounds: (1) that, because the November 7, 1988, order was appealable as a matter of right, the failure to do so results in the finality of that order; and (2) that, in any event, application for permission to appeal an order must be filed within thirty days of that order.

■ Defendants concede that the November 7, 1988, order certifying the class

was appealable as of right under Iowa Rule of Civil Procedure 42.4(c) and our holding in *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 366–67 (Iowa 1989). They assert, however, that an order appealable as of right prior to final disposition of all claims as to all parties does not necessarily become final by reason of the failure to appeal within thirty days.

Defendants argue that under Iowa Rule of Appellate Procedure 5(b) a litigant adversely affected by such an order may wait to appeal until after final judgment on all issues as to all parties. *See, e.g., Davis v. Ottumwa YMCA*, 438 N.W.2d 10, 16 (Iowa 1989); *Midthun v. Pasternak*, 420 N.W.2d 465, 467 (Iowa 1988). By analogy, defendants contend that, where an interlocutory appeal is granted on a timely application to appeal from a potentially outcome-determinative interlocutory order, this court may, in its discretion, also permit an appeal from earlier orders which inhere therein.

We believe defendants' suggestion is sound. We have recognized that the most significant consideration in the granting of interlocutory appeals is whether the interest of sound and efficient judicial administration can best be served by allowing certain rulings to be appealed in advance of final judgment even if those determinations will ultimately be reviewable upon conclusion of the litigation. *See Banco Mortgage Co. v. Steil*, 351 N.W.2d 784, 787 (Iowa 1984).

We believe situations may arise in which earlier orders which have not been appealed are so inextricably intertwined with the issues presented in an appeal of a subsequent interlocutory order that consideration of both orders is necessary to best facilitate the litigation as a whole. This is such a case. To deny an appellate court the right to review the merits of prior orders in such situations would unduly tie its hands. We therefore review the November 7, 1988, order certifying the class in connection with our review of the February 15, 1989, order on the cross-motions for summary judgment.

## II. *Whether Plaintiffs are Sufficiently Representative of the Class to Have Standing to Litigate on Its Behalf.*

We next consider whether, as defendants urge, the named plaintiffs are so unrepresentative of the class that they should be denied standing as class representatives. As a factual premise for this contention, defendants assert that the Iowa Nurses' Association has no claim, either under Iowa Code chapter 91A or otherwise, for the monetary relief being sought on behalf of the class. Defendants also claim that plaintiffs Hammer and Drury did not suffer the type of harm for which relief is requested on behalf of the class. This contention is premised on the assertion that, after comparable worth implementation by the Department of Personnel, Hammer and Drury were both placed at the lowest salary attainable in their respective pay grade. Defendants urge that, because the June 4, 1985, executive order provided that no employee's salary would be adjusted below the minimum salary for the applicable pay grade, Hammer and Drury were unaffected by that order.

We have recognized a standing requirement for class representatives by stating that "a class representative must be a member of the class sought to be represented." *Vignaroli v. Blue Cross*, 360 N.W.2d 741, 746 (Iowa 1985). This concept is discussed in the following commentary.

[T]he claims of the plaintiff must be typical of the claims of the class, and the plaintiff must fairly and adequately protect the interests of the class members. A major part of meeting both these qualifications is related to standing concepts. More specifically, they are related to the requirement that the *individual injury in fact suffered must arise directly from the violations charged that are common to the class.* Simply stated— assuming common issues, the plaintiff must have individual standing in order to raise those common issues. Many courts have expressed this rule of qualification for class representative as a requirement that the class plaintiff have *shared standing with* or be a *part of* or a *member of the class.*

1 H. Newberg, *Newberg on Class Actions* § 2.05, at 48 (2d ed. 1985) (some emphasis added). Applying this test to the present factual situation, we agree with the defendants that the Iowa Nurses' Association does not have standing to litigate the monetary claim being made on behalf of the class.

In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Court examined the standing of a membership association to assert claims of its members and concluded:

> [T]o justify any relief the association must show that it has suffered harm, or that one or more of its members are injured. But, apart from this, whether the association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.
>
> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such.

*Id.* at 515, 95 S.Ct. at 2213–14, 45 L.Ed.2d at 364 (citations omitted).

█ We believe that the standing of a membership association to pursue a class action on behalf of its members is the same as its standing to seek relief on behalf of its members generally. In the present case, the subsequent legislative reversal of the challenged salary downgrading has eliminated any claim for prospective relief to members of the Iowa Nurses' Association. The claims of class members involve only recoupment of past monetary loss.

That loss was not suffered by the Iowa Nurses' Association as such, and that entity therefore lacks standing to represent the class in seeking such recovery.

Defendants' standing challenge, aimed at plaintiff Barbara J. Hammer and plaintiff Janice E. Drury, involves similar considerations. It is necessary that these plaintiffs demonstrate that they have suffered the same type of injury for which they seek relief on behalf of the class. In interpreting analogous provisions of the federal class action rules, the Supreme Court has stated: "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as class members." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453, 462 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706, 716 (1974)).

In *Satterwhite v. City of Greenville*, 578 F.2d 987, 992 (5th Cir.1978), *vacated on other grounds*, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980), the federal court of appeals held that a particular person was not a proper representative of the class because it had already been determined in preliminary adjudications that she had not sustained the type of injury for which relief was being requested by the other class members. The court dismissed the class action in its entirety because the plaintiff Satterwhite was the only named class representative. The Supreme Court vacated the decision of the court of appeals, not because of any concern for the adjudication involving the class representative but because of the belief that disposition of the individual representative's claim should not be dispositive of the continuation of the litigation on behalf of the class. *Satterwhite v. City of Greenville*, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980).

Proceedings in the *Satterwhite* litigation after remand are not reported, but they are discussed in the decision of the same federal appellate court in *Walker v. Jim Dandy Co.*, 638 F.2d 1330 (5th Cir.1981). This discussion indicates that after remand in *Satterwhite* the federal court of appeals remanded the case to the district court to

determine whether the controversy could be continued by at least some members of the class which the dismissed plaintiff had sought to represent. *Jim Dandy*, 638 F.2d at 1335. Based on the action of the Supreme Court in *Satterwhite*, the court in *Jim Dandy* concludes that certification bestows a legal status upon the class apart from the interest asserted by the representative. *Jim Dandy*, 638 F.2d at 1335.

We agree with defendants that, if it is ultimately determined in the present litigation that plaintiffs Hammer and Drury have not sustained the type of injury for which they are seeking relief on behalf of the class, they may no longer continue as class representatives. If that does occur, a reasonable opportunity should be given other class members to intervene as class representatives.[1] It is not necessary, however, to face that issue at this time. The issue of whether the salary classification for Hammer and Drury following implementation of comparable worth was at the lowest level of a salary grade is yet to be determined. Defendants' assertion that this was so is factually supported only by a conclusory statement in the affidavit of the Director of the Department of Personnel filed in support of defendants' cross-motion for summary judgment.

There are other indications in the record that the salary levels of Hammer and Drury immediately prior to implementation of comparable worth were not at the lowest level within their respective salary ranges. Consequently, for purposes of adjudicating the cross-motions for summary judgment, a genuine issue of material fact remains as to whether these two plaintiffs were affected by the challenged executive order—a circumstance which leaves that issue for determination at the hearing on damages.

III. *Whether the June 4, 1985, Executive Order is Violative of Section 3(2) of Senate File 2359.*

Defendants contend that the June 4, 1985, executive order adjusting comparable worth upgrades for employees not members of collective bargaining units does not contravene any employee wage entitlement conferred under section 3(2) of Senate File 2359. The relevant language of section 3 reads as follows:

Sec. 3. NONCONTRACTUAL EMPLOYEES. For noncontractual employees under the state merit system, the following implementation schedule applies for the initial phase of comparable worth adjustments:

1. In implementing the first phase of comparable worth adjustments, employees in job titles whose current pay grade is below the comparable worth pay grade shall be adjusted upward to their comparable worth pay grade. However, no job titles shall be raised above pay grade thirty-two under the initial implementation process. This implementation shall only be done after completion of the review process.

2. *In implementing the first phase of comparable worth adjustments, employees whose pay grades will be increased shall retain their merit step positions when those adjustments are made.*

1984 Iowa Acts ch. 1314, § 3 (emphasis added).

Defendants argue that section 3(2) is inapplicable to professional and managerial employees such as plaintiffs because these plaintiffs do not have established merit step positions in their respective pay plans. Defendants point out that under Department of Personnel rules "steps" within a pay grade denote fixed salary levels to which employees are automatically moved upon attaining established criteria. *See* 581 Iowa Admin. Code 4.5(2)(b)(1). Defendants urge that, in 1981 Iowa Acts chapter 9, section 19(4), the legislature eliminated fixed salary "steps" within pay grades for all professional and managerial class employees. This category of employees now

---

1. The statute of limitations applicable to members of the class has been tolled by the filing of this action. Iowa R.Civ.P. 42.18.

receives in-grade pay raises at the discretion of their respective supervisors. Defendants contend that, because "merit step positions" did not exist for employees in plaintiffs' category at the time Senate File 2359 was enacted, the language of section 3(2) requiring that merit steps be retained is inapplicable to these employees.

We detect two flaws in defendants' argument. The first flaw lies in the fact that the challenged executive order itself speaks of "steps," both in denoting that which the Department of Personnel had done in implementing comparable worth for employees such as plaintiffs and in describing the downward adjustments which the executive order was making to those employees' salaries. Under the interpretation which defendants are now advocating, it would have been impossible for Executive Department employees to carry out the June 4, 1985, executive order as there would have been no recognizable pay levels within a pay grade to which employees could be dropped in keeping with the proposed downward adjustments.

A second and more fundamental flaw in defendants' argument lies in the fact that the interpretation which they propose is manifestly inappropriate when considered in context. Under defendants' proffered interpretation of section 3(2), the only category of employees which would have "merit step positions" would be those employees for which collective bargaining agreements have been negotiated and are in effect;[2] this is not the category of employees to which section 3(2) is specifically directed. All of section 3 of the act deals exclusively with comparable worth implementation for employees who were *not* subject to collective bargaining agreements. 1984 Iowa Acts ch. 1314, § 3. The implementation of comparable worth for employees who were subject to collective bargaining agreements was separately dealt with both as to procedure and funding in section 4 of Senate File 2359.[3] 1984 Iowa Acts ch. 1314, § 4.

We are unwilling to attribute a meaning to the phrase "merit step positions" in section 3(2) which would render that section meaningless as to the only category of employees to which it applies. We have consistently recognized that the legislature should be presumed to have enacted each part of a statute for a purpose and to have intended that each part be given effect. *Sioux City Community School Dist. v. Iowa State Bd. of Pub. Instruction*, 402 N.W.2d 739, 742 (Iowa 1987); *Iowa Dep't of Transp. v. Nebraska–Iowa Supply Co.*, 272 N.W.2d 6, 11 (Iowa 1978). We have also recognized that statutory words and phrases are ordinarily to be construed according to their context. *Kearney v. Ahmann*, 264 N.W.2d 768, 769–70 (Iowa 1978).

In interpreting statutes, we must take account of the object sought to be accomplished, the problems sought to be remedied, and arrive at an interpretation which will best effect those objectives. *AFSCME/Iowa Council 61 v. Iowa Dep't*

**2.** It is conceded in the affidavit filed by defendants in resistance to plaintiffs' motion for summary judgment and further conceded in defendants' brief on appeal that:

> The thirteen (13) pay plans fall into three categories: 1) pay plans for job classes that are eligible for collective bargaining and for which collective bargaining agreements have been negotiated and are in effect; 2) pay plans for job classes that are eligible for collective bargaining but for which collective bargaining agreements have not been negotiated; and 3) pay plans for job classes which are ineligible for collective bargaining.
>
> Some, but not all, of the pay plans contain "steps." ... The first category of pay plans [for those employees with collective bargaining agreements] have pay "steps" within each pay grade. The second and third category of pay plans do not have pay "steps" within each pay grade.

**3.** This statute reads:

> Sec. 4. CONTRACTUAL EMPLOYEES. For contractual employees under the state merit system, the governor and the certified bargaining representatives shall implement comparable worth consistent with the provisions of chapter 20 [those statutes which provide for collective bargaining by public employees].
>
> Appropriations made to implement the comparable worth adjustments as provided in section 7 of this Act ... shall be separate and distinct from any appropriations made to implement a collective bargaining agreement negotiated, consistent with chapter 20, between the state and the state's employees.

*of Pub. Safety,* 434 N.W.2d 401, 404 (Iowa 1988); *Shidler v. All Am. Life & Fin. Corp.,* 298 N.W.2d 318, 321 (Iowa 1980). Applying this principle to the present dispute, we believe that the phrase "merit step positions" as utilized in section 3(2) of Senate File 2359 merely denotes the relative pay level of an employee within a pay grade. We believe it was the intent of the legislature in enacting section 3 of Senate File 2359 that, wherever "noncontractual" employees such as these plaintiffs were located in the pay matrix immediately prior to comparable worth adjustments, this relative in-grade pay level was to be maintained in the newly assigned pay grade. The purpose of this provision was to assure that individual employees would maintain the benefit of merit pay raises previously received in relation to the pay standing of other employees who perhaps had not received such rewards for meritorious performance.

Based on our interpretation of the issues presented, we hold the district court did not err in sustaining plaintiffs' motion for summary judgment and denying defendants' cross-motion for summary judgment. We affirm that ruling. We modify the district court's order of November 17, 1988, by directing that the Iowa Nurses' Association be dismissed from the case as a party plaintiff. Otherwise, that order is also affirmed. All costs on appeal shall be assessed against appellants.

AFFIRMED AS MODIFIED AND REMANDED.