Rita PETERSEN, Mary Friederichs, Carolyn Gabrilson, and Arthur Stone, Appellants,

v.

DAVENPORT COMMUNITY SCHOOL DISTRICT, Denise Stanger, James Hester, Denise Hollenbeck, David Elliott, Peter Flynn, Margaret Barnes, and Georgia Jecklin, Appellees.

Nos. 98–1669.

Supreme Court of Iowa.

March 21, 2001.

Rehearing Overruled and Denied May 23, 2001.

Thomas H. Preacher, Bettendorf, for appellants.

Craig A. Levien and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., Davenport, for appellees.

CARTER, Justice.

Plaintiff, Rita Petersen, and other taxpayers residing in the Davenport Community School District, suing as a class, appeal from an adverse judgment in their damage action against the school district and board of education members pursuant to 42 U.S.C. § 1983. They contend that their federal constitutional rights were violated by the manner in which the board of education ruled invalid and failed to act on petitions seeking an election to block an instructional support program approved by the board.

The district court concluded that the process invoked by the board in rejecting the petitions was not consistent with due process of law. The court concluded, however, that plaintiffs had waived their right to demand a more favorable hearing process. The court denied any relief on plaintiffs' claims. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court in part, reverse the judgment in part, and remand the case to the district court for further determinations.

The issues in contention arose after the board of education approved participation in an instructional support program. Under the provisions of Iowa Code section 257.18, such participation may occur for ten years if the board initiates an election of the voters to approve the program. A program may be initiated for five years by resolution of the board subject to a right of the citizens of the district, of a number specified in the statute, to petition for an election to determine whether the action of the board should be approved. The statute that establishes the latter procedure reads as follows:

If the board does not provide for an election and adopts a resolution to participate in the instructional support program, the district shall participate in the instructional support program unless within twenty-eight days following the action of the board, the secretary of the board receives a petition containing the required number of signatures, asking that an election be called to approve or disapprove the action of the board in adopting the instructional support program. The petition must be signed by eligible electors equal in number to not less than one hundred or thirty percent of the number of voters at the last preceding regular school election, whichever is greater. The board shall either rescind its action or direct the county commissioner of elections to submit the question to the qualified electors of the school district at the next following regular school election or a special election

held not later than December 1 of the base year. If a majority of those voting on the question at the election favors disapproval of the action of the board, the district shall not participate in the instructional support program. If a majority of those voting on the question favors approval of the action, the board shall certify the results of the election to the department of management and the district shall participate in the program.

At the expiration of the twenty-eight day period, if no petition is filed, the board shall certify its action to the department of management and the district shall participate in the program.

Iowa Code § 257.18(2) (1993).

Plaintiffs circulated petitions to obtain the necessary signatures for a special election. To trigger an election, plaintiffs were required to obtain 3058 signatures on their petitions. The petitions they ultimately submitted to the board contained 3345 signatures. Plaintiffs discovered that some of the signatures were duplicated. As a result, they reduced the number of signatures to 3325 on the receipt submitted to the board's secretary. The petitions were submitted within the twenty-eight-day time period prescribed in section 257.18(2).

A group of citizens, which included three current board members and Georgia Jecklin, a former board member, examined the petitions and determined that 261 of the signatures were invalid and forty-two had been removed or withdrawn for good cause by affidavit at the request of individuals who had signed the petitions. At a meeting of the board of education on April 4, 1994, Jecklin gave a presentation in which she contended that many of the signatures on the petitions were invalid.

The day after Jecklin's presentation to the board, plaintiffs went to the board's secretary and asked for a copy of Jecklin's summary sheet. Although Jecklin's working papers were sitting on the public counter at the time plaintiffs made this request, the request was denied, and the information was promptly removed from the public counter. On April 11 plaintiffs again requested information concerning the signatures deemed invalid from the board's secretary. That request was also refused. Plaintiffs were never provided with a list of the signatures being challenged.

On April 15, 1994, the board called a special meeting. At that meeting, Ms. Jecklin was allotted a special place on the agenda and spoke for approximately one-half hour, presenting a list of challenged entries on the petitions. Her presentation was followed by an open forum, at which various members of the public were each allotted approximately three minutes to speak. This open forum was the only time allotted to plaintiffs in which to respond to Jecklin's statements. At the conclusion of the open forum, the board took a ten-minute recess. When the meeting resumed, the board promptly voted to declare the petitions invalid.

The board found several signatures on the petitions to be invalid for the following reasons: (1) 135 were not verifiable, (2) twenty-seven had been duplicated, (3) three persons signing were under voting age, (4) fourteen addresses were shown not to be in the school district, (5) in forty-six instances one person signed for two, and (6) thirty-three were deemed questionable for unspecified reasons.

In addition, the board found that the wording of the petitions was misleading and was not in compliance with Iowa Code section 257.18(2). It further concluded that in some instances individuals were improperly induced to sign the petitions by misstatements of fact. Based on all of its findings, the board concluded the petitions

should be given no effect with respect to the district's planned participation in the instructional support program. Other facts that bear on our decision will be considered in our discussion of the legal issues presented.

## I. *Authority of the Board to Invalidate the Petitions.*

 Plaintiffs' first claim on appeal is that the board of education lacked legal authority to invalidate the petitions that were submitted to the board's secretary. They urge that the procedures specified in the election contest statutes incorporated by reference in Iowa Code section 277.22 were the proper means to lodge such challenge. We need not determine whether this contention is correct. Plaintiffs' action is not brought to validate the petitions under state law, so as to require a determination of what that law is. Its purpose is to obtain an award of money damages under 42 U.S.C. § 1983. Plaintiffs in actions under 42 U.S.C. § 1983 must base their claims on a violation of federal law. *Leydens v. City of Des Moines*, 484 N.W.2d 594, 596 (Iowa 1992); *Bailey v. Lancaster*, 470 N.W.2d 351, 356 (Iowa 1991). Whether the board of education or some other agency is empowered to pass on the legal sufficiency of petitions submitted under section 257.18(2) is an issue of state law. Consequently, even if the board misinterpreted that law by assuming authority that it did not have, that conduct would not give rise to a § 1983 claim.

## II. *Whether the Petitions Contained an Adequate Number of Legally Proper Signatures.*

 Plaintiffs next argue that, even if the board did have authority to invalidate

the petitions for good cause, there was no valid legal reason for doing so in the present case. Once again we are forced to search for the resulting federal law violation should plaintiffs' claims prove to be true. To establish the violation of a federal right, plaintiffs rely on *Duncan v. Poythress*, 657 F.2d 691, 703–04 (5th Cir.1981). That case held that a federal right of substantive due process may be violated when state officials act to disenfranchise voters in violation of state law.

The board of directors' argument points out that the present case differs substantially from the situation in *Duncan*. That case involved the failure to hold an election mandated by statute for purposes of filling a vacancy on the state supreme court. In the present case, an election is not mandated, and more importantly, the record makes clear that irrespective of the validity of plaintiffs' petitions no election would have been held.[1] Notwithstanding the fact that no election would have been called, plaintiffs would have been able to block participation in the instructional support program had their petitions been found to be valid. We need not determine whether the rationale of the *Duncan* case applies to the present factual situation because we conclude that the board's rejection of the petitions was proper.

Petitions used to invoke the procedure of section 257.18(2) are to request (to the board of education) "that an election be called to approve or disapprove the action of the board in adopting the instructional support program." The petitions that plaintiff circulated ask that an election be called "to determine whether the Davenport school district should participate in

---

1. The timing of the board's resolution approving participation in the program came so late in its budgeting process that, if a sufficient number of valid petitions had been filed, the board would have had to rescind its resolution rather than submitting the matter to an election.

the instructional support levy program." While at first blush this difference in wording may seem slight, it is in fact significant. The language contained in plaintiffs' petitions failed to inform those persons signing them that the issue to be decided in the election was the validity of the action already taken by the board of education. Based on that omission and the language that was in fact used, signers could infer that an election was necessary in order to have the instructional support levy. Such a belief could entice persons who favored the levy to sign the petitions. Affidavits were filed by some signers indicating that this had in fact occurred. We conclude that the statement of the issue to be voted on deviated sufficiently from the realities of the statutory procedure that the petitions were invalid as a matter of law.

### III. *Plaintiffs' Due Process Claim.*

■ Finally, we consider plaintiffs' contention that the method in which the board acted to invalidate the petitions denied them due process of law as guaranteed by the Fourteenth Amendment to the Federal Constitution. This allegation does state a violation of federal law ostensibly actionable under 42 U.S.C. § 1983. The district court concluded that the process under which the board rejected the petitions did not accord plaintiffs due process of law. The court found that plaintiffs were not offered a reasonable opportunity to refute the challenges lodged to various signatures contained on the petitions. The court concluded, however, that, because one of the class members was a member of the board of education and voted in favor of the resolution establishing the hearing procedure, the class as a whole waived any right to have a more favorable hearing process.

■ In so ruling, the district court interpreted *Vignaroli v. Blue Cross of Iowa,* 360 N.W.2d 741, 746 (Iowa 1985), as sad-

dling all members of a class with the actions of certain individual class members. We agree with plaintiffs that this interpretation of *Vignaroli* was incorrect. We stated in *Vignaroli* that "the interests of a number of persons not present before the court are conclusively determined on the strength of the case made by the representative parties." However, that language refers to the binding effect of a judgment in the class action on all members of the class. It does not support an imputation to the entire class of the conduct of an individual class member bearing on the merits of that person's claim. We recognized in *Hammer v. Branstad,* 463 N.W.2d 86, 90 (Iowa 1990), that disposition of an individual representative's claim is not dispositive of the rights of the entire class.

■ As a consequence of our finding that no waiver occurred, we conclude that the evidence supports the district court's finding that the board violated plaintiffs' procedural due process rights under the Fourteenth Amendment. Not only were plaintiffs not granted an opportunity to refute the allegations at the hearing, they were denied access to the identity of the signatures that were being challenged until it was too late to respond. Although the board claims that plaintiffs waived any right to challenge that denial of information by not going into court and requesting an order for its production, that claim is untenable. Plaintiffs were entitled to have the data they requested produced by the board of education, and the failure to produce it was a violation of their procedural due process rights under the Fourteenth Amendment. In litigation under 42 U.S.C. § 1983, there is no requirement that a plaintiff exhaust available state law remedies as a condition of seeking the remedy provided by the federal statute. *Plough v. West Des Moines Cmty. Sch. Dist.,* 70 F.3d 512, 514 (8th Cir.1995).

 The board urges that any denial of procedural due process that may have occurred should not entitle plaintiffs to relief because for reasons that we have already found to exist the petitions were invalid on their face. Consequently, the board urges that it or any reviewing court was required as a matter of law to ultimately find that the petitions were invalid. This contention by the board is rendered untenable by the decision in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The Court held in that case that plaintiffs who establish a violation of procedural due process in actions under 42 U.S.C. § 1983 are entitled to some damages irrespective of the fact that the contentions that they wish to have heard are lacking in legal merit. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1054, 55 L.Ed.2d at 266 ("Because the right to procedural due process is 'absolute,' . . . it does not depend upon the merits of a claimant's substantive assertions. . . .").

The board urges that the entitlement established in the *Carey* case does not extend to situations in which the parties who are denied procedural due process will ultimately be unable to prevail as a matter of law, as contrasted with those parties ultimately not prevailing on an interpretation of the facts. We do not believe that this distinction can be found in *Carey*. The distinction would be particularly inappropriate in the present case in which the board clearly sought to invalidate the petitions based on an absence of valid signatures as well as on the theory that the wording of the petitions was fatally flawed. Plaintiffs were entitled to procedural due

process in resisting the former contention irrespective of the latter contention.

 Plaintiffs who establish procedural due process violations are entitled to recover out-of-pocket expenses and, in addition, damages for impairment of reputation, personal humiliation, and mental anguish and suffering. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249, 258 (1986). Plaintiffs who have established such violations are entitled to no less than an award of nominal damages. *Carey*, 435 U.S. at 266–67, 98 S.Ct. at 1054, 55 L.Ed.2d at 267.

In anticipation that its decision as to liability might be overturned on appeal, the district court made a finding as to plaintiffs' damages. It found that, if plaintiffs were correct concerning their due process claims, they were entitled to only nominal damages. It based this finding on the conclusion that the adverse consequences that had befallen plaintiffs were the result of the legal invalidation of their petitions rather than the illegal procedures employed to reach that result. We are convinced that this finding has adequate support in the record.[2]

 The board urges that the district court's alternative-damage ruling in the event that liability was established on appeal only awarded nominal damages to the class as a whole. While the language of the court's order may be so interpreted, the issue turns on a proper application of the *Carey* holding to a class action in which the claims of the individual class members are individual in character and disparate in amount. This is an issue of

---

2. This finding is in keeping with an admonition set forth in *Carey:*

> [W]here a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. . . . This ambiguity in causation . . . provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.
>
> *Carey*, 435 U.S. at 263, 98 S.Ct. at 1052, 55 L.Ed.2d at 264–65.

law rather than an issue of fact, and we are not bound by the district court's conclusions.

■ Under Iowa Rule of Civil Procedure 42.15,

[t]he court may award any form of relief consistent with the certification order to which the party in whose favor it is rendered is entitled including equitable, declaratory, *monetary*, or other *relief to individual members of the class* or the class in a lump sum or installments.

(Emphasis added.) As we have noted, the damages that may be recovered for denial of procedural due process include out-of-pocket expenses, damages for impairment of reputation, personal humiliation, and mental anguish and suffering. Those damages would differ among various members of the class. If class members had been damaged and the court was seeking to grant them relief, individualized determinations of damages would be proper if not impracticable because of the size of the class. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1784, at 77 (1986). If it is impracticable to award discreet individual recoveries

[c]ourts must use their discretion, and in many instances their ingenuity, to shape decrees or to develop procedures for ascertaining damages and distributing relief that will be fair to the parties but will not involve them in an unduly burdensome administration of the award.

*Id.* § 1784, at 78.

The goal in all instances is to determine the aggregate sum, which fairly represents the claims of the individual class members. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 233 (7th Cir. 1983); *Samuel v. University of Pittsburgh,* 538 F.2d 991, 995–96 (3d Cir. 1976). For that reason, we believe a single award of nominal damages for the class as a whole would be inappropriate because, it suing separately, each of the class members would be entitled to an award of nominal damages. On remand the district court shall enter judgment for nominal damages in favor of each of the members of the class.

■ An award of nominal damages renders plaintiffs the prevailing parties in the litigation pursuant to the Court's holding in *Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 504 (1992). Notwithstanding their attaining such status, plaintiffs' entitlement to fees and costs under 42 U.S.C. § 1988 are dependent upon an application of various factors set forth in the *Farrar* decision. The district court shall consider the attorney-fee issue following remand.

The district court's findings and conclusions that establish plaintiffs are only entitled to nominal damages is affirmed. Its judgment on the issue of liability is reversed on the procedural due process claims but affirmed on the other claims. The case is remanded to the district court for further proceedings consistent with this opinion.

Given the peculiar attributes concerning entitlement to fees and costs under 42 U.S.C. § 1988, we conclude that the taxation of costs on this appeal shall abide the district court's determination of cost entitlement following remand. The clerk of this court shall simply certify to the district court the gross amount of taxable costs, and that amount shall be allocated by the district court in its determination of the other issues involving fees and costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except LARSON and NEUMAN, JJ., who take no part.