SHAFER, Admr., v. GRIMES.

1. Abatement: ACTIONS EX DELICTO: SEDUCTION. The common law rule (*actio personalis moritur cum persona*) that a personal action dies with the person, is not in force in this State; and under our statute, Laws of 1862, p. 229, no cause of action either *ex delicto* or *ex contractu*

abates by the death of either party, if from the "legal nature of the case it can survive." It is accordingly held that an action of seduction commenced by the injured party who died during its pendency, survived to her administrator.

2. —— STATUTE CONSTRUED. By the use of the words "legal nature" in the act of 1862, it was not intended to preserve the technical rule of the common law above referred to, but its abrogation, rather, was the object of the statute.

3. Instruction: ERROR WITHOUT PREJUDICE. A judgment will not be reversed on account of the giving of an instruction which was technically erroneous, if it could not have operated to increase the verdict.

*Appeal from Ringgold District Court.*

THURSDAY, JANUARY 23.

ACTIONS EX DELICTO, SURVIVOR OF, ETC.: SEDUCTION.—— Mary Ellen Shafer in her life-time commenced this action, by attachment, in her own name to recover damages for her seduction. She died before trial, and her administrator was substituted as plaintiff, and a verdict was rendered in his favor for one thousand dollars. Judgment passing upon the verdict, defendant appeals.

The questions made appear in the opinion.

*J. W. Warner* and *Perry & Townsend* for the appellant.

*C. E. Millard* for the appellee.

DILLON, Ch. J. —— This action was brought by the plaintiff's intestate in her life-time, under section 2790 of 1. ABATEMENT: the Revision, which enacts that " An unmar-actions *ex delicto :* ried female may prosecute, as plaintiff, an seduction. action for her own seduction, and recover such damages as may be found in her favor."

Before trial she died, and her administrator was substituted as plaintiff and had a recovery. The record presents

the question, whether the action could survive to the administrator? If this question were addressed to our sympathies, or to the common, instead of the *legal* understanding, it would meet with a ready and decided answer in the affirmative.

In justice and reason, why should death put an end to the liability of the seducer?

The party seduced may have lost her health in consequence of the grief, shame and mortification occasioned by the defendant's wrongful act. She may have had to incur expenses for medical attention. There is in every seduction more or less pecuniary injury, as well as the greater injury to the feelings and the almost if not quite irreparable injury to character and reputation.

If the defendant had promised to pay the person one thousand dollars for the wrong he did her, such promise would be binding in law, and it would not be contended that the death of either the promiser or promisee would put an end to the liability.

In essence and substance such is the effect of our statute which says to the seducer, you shall pay the party seduced the damages occasioned to her by reason of the seduction; and death should not terminate the liability in the one case any more than in the other.

Thus would the case strike the mind were we at liberty to decide it upon principle alone. But it is our duty to decide it upon the law, and we now turn to ascertain the state of the law respecting the question whether the action died with the person or survived to the administrator. This question must be determined by the construction to be given to the statute of 1862 (Laws 1862, p. 229), to which reference will presently be made. But in construing the statute it is necessary to look at it in the light of the common law, and the provisions of prior statutes on the same subject.

The common law rule or maxim is *actio personalis moritur cum persona* (4 Just. 315 ; Broom Leg. Max. 702), and while it is somewhat uncertain just how far this rule extended, it is certain that it included all actions in substance, *ex delicto*, for injuries to the person as distinguished from injuries to property.

In form, it included all actions *ex delicto ;* but in cases where the tort was beneficial to the estate or property of the wrong-doer, the action (which might be in assumpsit, or *ex contractu* in form, waiving the tort) would lie against the representatives of the wrong-doer.

This doctrine of the common law and the distinction between injuries merely personal (which die with the person) and those which affect the estate or property rights, and therefore survive to and against the executor, are clearly expounded by Lord MANSFIELD in the leading case of *Hambly* v. *Trott* (1 Cowp. 371). And see in further illustration, *Chamberlain* v. *Williamson* (2 M. & S. 408), in which the K. B. held that an action on a marriage promise did not survive to an administrator. *Stebbins* v. *Palmer*, 1 Pick. 71 (approved, 4 Cush. 408), holding that such an action did not survive against the administrator of the promiser ; *People* v. *Gibbs*, 9 Wend. 29 ; *Cravath* v. *Plympton*, 13 Mass. 454; 3 Black. Com. 302.

Hence, at common law, actions *ex delicto*, as for assault or injuries to the person, trespass, slander, libel, nuisance, escape against sheriff, trover, and the like, die with the person. See authorities last cited. And so at common law as respects the action for seduction. *Brawner* v. *Sterdevant*, 9 Geo. 69.

It therefore follows, that, whether we think the common law rule well founded or not, we should have to hold that the action in the case at bar did not survive, if that rule has not been changed by statute.

In England the rule *actio personalis*, etc., has been to

some extent changed by the statute of 4 Edw. III, as to injuries to *personal* property, and by 3 and 4 William IV, as to trespassers to property.

In this country it has been greatly restricted by statutes; the statutes differing in the extent to which they go, but all of them intended to narrow the application of the rule. The nature of the legislation and the course of decision will be seen by reference to the following cases: *Smith* v. *Sherman* (breach of promise), 4 Cush. 408; *Walters* v. *Nettleton* (libel), 5 Id. 544; *Demond* v. *Boston*, 7 Gray, 544; *Haight* v. *Hayt*, 19 N. Y. 464; *Grim* v. *Carr*, 31 Pa. St. 533; *Nutting* v. *Goodridge* (slander), 46 Maine, 82; *Long* v. *Morrison* (malpractice), 14 Ind. 595; *Reed* v. *R. R. Co.*, 18 Ill. 403; Id. 536; *Clarke* v. *McClelland* (*crim. con.*), 9 Barr. 128; *The M. E. Church* v. *Rench*, 7 Ohio St. 369; *Brawner* v. *Sterdevant*, 9 Geo. 69; *Torry* v. *Robertson*, 24 Miss. 192.

At common law, a suit abated by the death of a natural party before trial or verdict. If the cause of action was one that did not survive, death put a final end to the suit. If the cause was one that survived or could survive, the plaintiff or his executor was obliged to bring a new action against the defendant or his executor. Broom's Legal Max. 179.

The way is thus prepared to view the legislation in this State respecting the effect of death on actions and causes of action.

The Code of 1851 contained this general provision:

"SEC. 1698. Actions do not abate by the death, marriage or other disability of either party, or by the transfer of any interest therein, if from the nature of the case the cause of action can survive or continue.

"SEC. 1699. In such cases, the court, on motion, may allow the action to be continued by or against his representative or successor in interest."

Twice did this statute come before this court in actions for tort. In the first case (*Carson* v. *McFadden*, 10 Iowa, 91), it was held, that a pending action of libel did not abate by reason of the death of the defendant. The court said (referring to the language of the statute, as "to the nature of the case"): "There is nothing in this instance, in the *nature of the case*, which should prevent the action being continued against the administrator." In that case it was the *defendant* that died, but the statute applies to "the death of either party," and there would have been no abatement, under the statute, if the plaintiff had been the party that deceased.

In the other case referred to (*McKinley* v. *McGregor*, 10 Iowa, 111), it was held, under the above section (1698), that a civil action for assault and battery might be commenced and sustained against the administrator of the wrong-doer. Thus, by implication, at least (for it does not appear that the point was expressly made), the statute was extended not only to "actions," but to causes of action.

This remained the law until the Revision of 1860. Section 1698 of the Code of 1851 was not retained, but in place thereof there were two other sections, viz., 2794 and 3467.

The first provides, that "no action shall abate by the transfer or assignment of any interest therein during its pendency;" and so of marriage. But nothing is said in section 2794 respecting the effect of death.

Section 3467 broadly enacted that, "no cause of action *ex delicto*, dies with either or both parties, but the prosecution thereof may be commenced or continued by or against their personal representatives." Then follow thirteen sections, as to the *mode of reviving actions* where death has intervened.

In 1862, the legislation of 1860, just referred to, was

repealed, and the following substituted: " Actions either *ex contractu* or *ex delicto* do not abate by the death, marriage, or other disability of either party, nor by the transfer of any interest therein, if, from the legal nature of the case the cause of action can survive or continue."

By comparing this language with section 1698, of the Code of 1851, above quoted, it will be seen that the two are identical except in the use of the word " legal," in qualifying the " nature of the case," and the insertion of the words " *ex contractu* " and " *ex delicto* " after the word " actions." If it were not for the use of this word " legal " in the act of 1862, the question in the case at bar would be decided against the defendant by the cases of *Carson* v. *McFadden*, and *McKinley* v. *McGregor*, above mentioned.

For the law when restored, would be taken to be restored with the construction it had received from this court while it was in force. For if libel which injures reputation, and assault which injures the person, survived, then seduction which involves a like injury to reputation and person would also survive.

So that the question is reduced to this: What is the effect of the use of the word " *legal*," as qualifying the suc-

2. —— statute construed. ceeding words " nature of the case ? " Appellant's counsel contend, that this word has wrought a most important change; a change which in effect revolutionizes the whole meaning of the section. In their written argument they define their position thus: " What is meant by the *legal* nature of the case? It means its nature as at common law. When we inqure after the legal nature of a case, in the absence of a statute, we go to the common law; and if we go to the common law to ascertain the legal nature of the case, we will have but little difficulty in determining that this cause of action did not survive."

We have before seen, that at common law such a cause of action did not survive. Hence, if appellant's position is correct, that by the legal nature of the case, is meant its common law nature, then the action in the case at bar, necessarily died with the person by whom it was commenced.

But, though ingenious, is the position itself sound? We think not. And our reason is, that this construction practically makes the section a *felo de. se.* With this construction the section would mean simply this, "actions do not abate by death if at common law they survive." Of course they would not, and the section would be useless.

What would be the effect? This: We would be referred to the common law to determine what actions death ended; and appellant's counsel tell us, and tell us truly, that all actions in substance and in form *ex delicto* die with the person, and that this includes assault, battery, false imprisonment, trespass, trover, escape against the sheriff, etc.

Such we do not believe to have been the intention of the legislature. It is against the almost uniform current of legislation. It is against justice. We do not know that we are bound to define exactly what idea was sought to be expressed by the word "legal." It is sufficient to say, that we are of opinion that it was not intended to enact the technical and unreasonable rule of the common law respecting the effect of death on pending actions.

This opinion is supported by the consideration that there are causes of action whose legal nature is such, that they cannot survive. For example, actions for divorce and alimony — *O'Hagan* v. *O'Hagan*, 4 Iowa, 509; for dower — *Betts* v. *Mathews*, 4 Harring. 427; or for other rights necessarily dependent upon the existence and relation of the person.

This opinion finds a further argument in its support, from the language employed. The idea of the section is, no abatement by death, etc., if the action *can* survive. That is, if it *can* live, it shall. Life and not death is the decree and ordination of the statute. This indeed is its very purpose.

II. Defendant complains of the giving of one instruction. In view of the moderate amount of the verdict 3. INSTRUCTION: we do not think, if it were admitted that the error without prejudice. instruction was technically erroneous, that it operated unjustly to increase the verdict of the jury. The court in a previous instruction had told the jury they could not allow damages for a breach of a marriage promise. In view of this and other instructions, we think the idea intended to be expressed in the instruction complained of, was simply this, that if the plaintiff yielded her virtue only in consequence of visits by defendant as a suitor, and his flatteries, arts, promises of marriage, etc., the jury may allow more damages than if she had yielded without any such trial or stress upon her virtue. And to this we see no objection.

But in the absence of the evidence, in view of the moderate amount of the verdict, the general, full and correct instructions of the court, covering every proper question upon which the defendant's counsel desired directions, we cannot reverse the judgment for the, at most, unimportant error in the single instruction which is made the subject of complaint.

Affirmed.