Charles W. DRENNAN, Appellant,

v.

John AULT, Appellee.

No. 96–220.

Supreme Court of Iowa.

July 23, 1997.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Layne M. Lindebak, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

PER CURIAM.

At issue in this appeal is whether the applicant, Charles Drennan, was deprived of a due process liberty interest when he was transferred from a community-based correctional program to the Iowa Medical and Classification Center at Oakdale (IMCC). We hold he was not.

Drennan was convicted of four counts of operating a motor vehicle while intoxicated, third offense. Pursuant to Iowa Code section 321J.2(2)(c) (1991), the Iowa Department of Corrections ("department") assigned him to a community-based correctional program.[1] Drennan was placed in the Larry Nelson Center ("Nelson Center") in Cedar Rapids, Iowa, where he violated a number of rules and escaped. Upon his capture he was taken to the IMCC and subsequently transferred to the Iowa Men's Reformatory in Anamosa and the Mount Pleasant Correctional Facility.[2]

While at the IMCC, Drennan had a disciplinary hearing. There is evidence he received notice of the hearing and a copy of the alleged rule violations. He admits he was afforded an opportunity to testify and examine witnesses. The IMCC official who presided over the hearing chose not to return Drennan to the Nelson Center because of his escape and other rule violations.

Drennan filed a postconviction relief application. At the postconviction hearing Drennan's counsel argued Iowa Code section 904.513 (1993) required that Drennan be reclassified in order for the department to transfer him from the Nelson Center to the IMCC and a hearing was required for such reclassification.[3] Drennan personally argued that section 321J.2 created a liberty interest because it required that the department send him to a community-based treatment facility under Iowa Code section 246.513 (1991).[4] He

1. Iowa Code § 321J.2(2)(c) provides in relevant part:

   If a person is convicted of a third or subsequent offense ... the offender may be committed to the custody of the director of the department of corrections, who, if the sentence is not suspended, shall assign the person to a facility pursuant to section 246.513....

2. The record indicates Drennan may have been transferred to additional locations including Rockwell City and Fort Madison. It is not clear exactly how many transfers were made or when they occurred.

3. Iowa Code § 904.513(1) provides in relevant part:

   **Assignment of OWI violators to treatment facilities.**
   ....
   b. *Except as otherwise provided in this section, the offender shall be assigned to a community-based correctional program.* If medical treatment is necessary, the offender may be assigned to the Iowa medical and classification center at Oakdale for treatment and assignment, until the offender's health status permits placement in a community-based correctional program.
   c. If there is insufficient space in a community-based correctional program to accommodate the offender, the court may order the offender to be released on personal recognizance or bond, released to the supervision of the judicial district department of correctional services, or held in jail. If the offender is ordered to the supervision of a judicial district department of correctional services, the district director may request, and the director of the department may approve, the transfer of the offender to the Iowa medical and classification center at Oakdale for classification and assignment, until space is available in a community-based correctional program.
   d. *If an offender fails to satisfactorily perform in a program conducted by a community-based correctional program, the offender shall be transferred to the Iowa medical and classification facility at Oakdale for classification and assignment.*
   (Emphasis added.)

4. Section 246.513 was the predecessor of § 904.513. Section 246.513(1) provided in relevant part:

   *The offender shall be assigned by the director to a facility pursuant to section 321J.2, subsection 2, paragraph "b" or "c", unless initial medical treatment is necessary or there is insufficient space to accommodate the person.* The offenders shall be assigned to the Iowa medical

claimed he had a due process right to notice and a hearing before he was transferred from a community-based treatment facility to a security institution.

Drennan was asked why the disciplinary hearing he received at the IMCC did not satisfy due process. He responded the hearing was insufficient because he believed reclassification (from work release to a security institution) and a revocation of his work release were not among the sanctions imposed against him.

Drennan's application was denied. The district court concluded he had been afforded notice and his reclassification and assignment were in compliance with the statutes and rules. Drennan has appealed and he argues the district court erred in not finding that sections 321J.2 and 904.513 created a due process liberty interest, entitling him to a hearing before being removed from the Nelson Center. See U.S. Const. amend. XIV.

Both parties agree Drennan's appeal is properly reviewable as a postconviction action. See Davis v. State, 345 N.W.2d 97, 99 (Iowa 1984) (conduct of prison officials which involves a substantial deprivation of liberty or property rights is reviewable in a postconviction action). Postconviction proceedings are ordinarily reviewed for the correction of errors at law. Kinnersley v. State, 494 N.W.2d 698, 699 (Iowa 1993). However, our review of an alleged violation of a constitutional right is de novo. Id. We can affirm the district court's decision on any basis appearing in the record. See State v. McCowen, 297 N.W.2d 226, 227 (Iowa 1980).

The United States Supreme Court has rejected the claim that prisoners have a due process liberty interest in being free from intrastate prison transfers, and it has held they are not entitled to fact finding hearings in connection with such transfers. See Mea-chum v. Fano, 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451, 462 (1976). In Meachum the Court noted that the state law in question conferred no right on the prisoners to remain in the prison to which they had been assigned and transfers between state prisons were not conditioned upon the occurrence of any specified events. Id. at 226–27, 96 S.Ct. at 2539, 49 L.Ed.2d at 460. Under those circumstances, the Court held no due process protections were triggered as long as prison officials had the discretion to transfer the prisoners for "whatever reason or for no reason at all." Id. at 228, 96 S.Ct. at 2540, 49 L.Ed.2d at 461.

Drennan attempts to distinguish his case from Meachum by arguing that Iowa law specifically conferred a right upon him to remain in the community-based correctional program, thus giving rise to a statutory due process interest. Under Iowa law, the director of the department generally has the discretion to determine the appropriate place of confinement of any person committed to the director's custody and to transfer the person to any institution during his or her confinement. Iowa Code § 902.5 (1991).[5] However, we have previously recognized that section 904.513 requires the department to place persons convicted of a third or subsequent OWI offense in a community-based treatment facility. See State v. Kapell, 510 N.W.2d 878, 879–80 (Iowa 1994) (construing section 246.513, the predecessor to section 904.513). In addition to being required to place these OWI offenders in a community-based program, section 904.513(1)(d) appears to condition the transfer of any of the offenders upon their failure to satisfactorily perform in the program.

Were we guided only by Meachum, there might be some merit in Drennan's claim. However, the Supreme Court recently reviewed its line of cases which followed Mea-

classification facility at Oakdale for classification if medical treatment is necessary or if the offender fails to satisfactorily perform in a treatment program conducted in a residential facility *operated* by a judicial district department of correctional services. The offender shall be assigned to an institution following classification.
(Emphasis added.)

5. Section 902.5 provides:

The director of the Iowa department of corrections shall determine the appropriate place of confinement of any person committed to the director's custody, in any institution administered by the director, and may transfer the person from one institution to another during the person's period of confinement.

*chum* and concluded that it had improperly shifted the focus of prisoner due process claims from the nature of the alleged deprivation to whether the language of a statute or regulation was mandatory or discretionary in nature. *Sandin v. Conner,* 515 U.S. 472, 481–83, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418, 428 (1995). The Court expressed a strong concern with the fact that its *post-Meachum* cases had "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481, 115 S.Ct. at 2299, 132 L.Ed.2d at 428. The Court held that when determining if a state statute or regulation confers a due process liberty interest, a court is to decide whether the nature of the alleged deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300, 132 L.Ed.2d at 430.

The Eighth Circuit Court of Appeals recently applied *Sandin* in rejecting the claim of an Iowa prisoner who claimed he had a protected liberty interest in remaining in the parole board's work release program and in not being returned to the Iowa Men's Reformatory. *Callender v. Sioux City Residential Treatment Facility,* 88 F.3d 666 (8th Cir. 1996). The court noted that Callender's deprivation was not atypical of the conditions of confinement inmates endured in daily prison life. *See id.* at 669.

 We similarly hold that Drennan had no due process liberty interest in remaining in the community-based correctional program. Despite the apparently mandatory nature of the language of sections 321J.2(2)(c) and 904.513(1)(b) and (d), a transfer to a higher degree of confinement or a reclassification to a more supervised form of prison environment (particularly following a prisoner's escape) does not appear to be an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Focusing on the nature of Drennan's alleged deprivation, we note that this is not a case in which he had been released from incarceration and had obtained parole or the equivalent thereof. *See Young v. Harper,* 520 U.S. ——, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nor does the department's decision to transfer him appear to affect the duration of his sentence. *See Sandin,* 515 U.S. at 487–89, 115 S.Ct. at 2302, 132 L. Ed.2d at 431 (noting the imposition of thirty days of disciplinary segregation did not affect the duration of the prisoner's sentence); *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935, 952 (1974) (holding prisoners were entitled to due process protections where a loss of good-time credits would affect the length of their term of confinement).

Under *Sandin,* we find the alleged hardship to Drennan was not atypical or significant in relation to the ordinary hardships of prison life. His transfer triggered no statutory due process right to a hearing. We affirm the denial of his application for post-conviction relief.

**AFFIRMED.**