# IN THE SUPREME COURT OF IOWA

No. 04–1705

Filed October 9, 2009

**VALENTINO MAGHEE,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Polk County, Artis Reis, Judge.

Inmate appeals district court's dismissal of his postconviction-relief action challenging the department of correction's revocation of his work release. **REVERSED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

**TERNUS, Chief Justice.**

This appeal presents two issues: (1) may an inmate whose work release has been revoked by the department of corrections challenge the revocation in a postconviction-relief action, and (2) does the inmate's death during the pendency of the appeal abate the cause of action or render the appeal moot. The district court dismissed the postconviction-relief action filed by the appellant, Valentino Maghee, ruling he should have challenged the department's revocation of his work release by a petition for judicial review filed under Iowa Code chapter 17A (2003). Maghee appealed, but died prior to the filing of briefs. The State filed a motion to dismiss the appeal on the basis the case abated upon Maghee's death. This court ordered the motion submitted with the appeal.

Upon our review of the arguments of Maghee and the State, we determine Iowa's survival statutes, Iowa Code sections 611.20 and 625A.17 (2005),[1] prevent abatement of Maghee's cause of action and this appeal. On the other hand, Maghee's death renders his appeal moot. Nonetheless, we conclude the issue raised in this appeal should be addressed under the public–interest exception to the mootness doctrine, and therefore, we deny the State's motion to dismiss.

In considering the proper vehicle for Maghee's challenge to the revocation of his work release, we hold Maghee properly chose a postconviction-relief action to contest the revocation, and therefore, the district court erred in dismissing his petition. Notwithstanding our decision that the district court should not have dismissed Maghee's petition on this ground, we do not remand this case. The underlying

---

[1]Two different Codes control aspects of this case. Maghee's discipline was imposed in 2003, and therefore, the 2003 Iowa Code governs his rights with respect to review of that decision. Maghee died in 2006. Consequently, the 2005 Iowa Code will control our determination of the impact his death had on this lawsuit and his claims.

issue—the propriety of the department's revocation of Maghee's work release—is moot, and no exception to the mootness doctrine applies so as to justify additional proceedings in the district court. Therefore, we reverse the judgment of the district court, but we do not remand the case.

### I. Background Facts and Proceedings.

At the time of the events giving rise to this case, Maghee was serving a prison sentence with the department of corrections. After being assigned to a facility in Marshalltown on work release, Maghee violated several rules governing his release. As a consequence, his work release was revoked, and he was transferred back to prison. Maghee filed an application for postconviction relief, challenging his transfer on several grounds. *See* Iowa Code § 822.2(5) (2003) (now codified at Iowa Code § 822.2(1)(*e*) (2009)) (providing person convicted of or sentenced for a public offense may commence a proceeding to obtain relief for certain specified claims, including a claim the person is "unlawfully held in custody or other restraint"). The district court dismissed his application on the State's motion, ruling Maghee should have contested the revocation of his work release under Iowa's Administrative Procedure Act, Iowa Code chapter 17A (2003), rather than in a postconviction-relief action.

Maghee appealed the dismissal of his lawsuit. During the pendency of his appeal, Maghee died. The State filed a motion to dismiss the appeal, claiming the action had abated due to Maghee's death. This court ordered the State's motion submitted with the appeal and requested that the parties brief two additional issues: (1) whether abatement was required, and (2) whether it would be appropriate to

apply the public-interest exception to the mootness doctrine. We turn now to these issues.

## II. State's Motion to Dismiss.

At common law causes of action *ex delicto*, or sounding in tort, for injuries to the person abated or were extinguished upon the death of the plaintiff or defendant.[2] *See Shafer v. Grimes*, 23 Iowa 550, 553 (1867) (referring to the "doctrine of the common law and the distinction between injuries merely personal (which die with the person) and those which affect the estate or property rights, and therefore survive to and against the executor"); 1 Am. Jur. 2d *Abatement, Survival, & Revival* § 51, at 137 (2005) ("At common law survivable actions are those in which the wrong complained of affects primarily property and property rights, and in which any injury to the person is incidental . . . ."). In addition, suits abated at common law upon "the death of a natural party before trial or verdict." *Shafer*, 23 Iowa at 554.

> If the cause of action was one that did not survive, death put a final end to the suit. If the cause was one that survived or could survive, the plaintiff or his executor was obliged to bring a new action against the defendant or his executor.

*Id.* Early in Iowa's existence as a state, the legislature enacted survival statutes to ameliorate the harshness of these common-law rules. *See*,

---

[2]It is well established that criminal prosecutions, including any pending appellate proceedings, abate upon the death of the defendant. *See*, *e.g.*, *State v. Holbrook*, 261 N.W.2d 480, 481 (Iowa 1978) (holding that "action is abated ab initio" as to defendant who died during pendency of appeal); *State v. Rutledge*, 243 Iowa 201, 203, 50 N.W.2d 801, 802 (1952) ("Where a defendant in a criminal case dies while an appeal from his conviction is pending in this court, the proceedings abate, ab initio, by reason of such death."); *State v. Kriechbaum*, 219 Iowa 457, 458, 258 N.W. 110, 110 (1934) ("It is almost the universal holding of the courts, federal and state, that the death of a defendant in a criminal prosecution abates the action."). A postconviction-relief action is civil in nature, *Goodrich v. State*, 608 N.W.2d 774, 776 (Iowa 2000), so the rule abating criminal prosecutions upon the defendant's death does not apply to the present proceeding.

*e.g.*, Iowa Code §§ 1698, 2502 (1851). *See generally Fabricius v. Horgen*, 257 Iowa 268, 272, 132 N.W.2d 410, 412 (1965) ("To the extent that [the survival statute] saves an action from abatement it is in derogation of the common law.").

The 1851 Code provided for the survival of causes of action *ex delicto*: "Unless from the necessity of the case, no cause of action *ex delicto* dies with either or both the parties, but the prosecution thereof may be commenced or continued by or against their respective representatives." Iowa Code § 2502 (1851). By 1873, this statute had been expanded to apply to all causes of action without limitation: "All causes of action shall survive, and may be brought, notwithstanding the death of the person entitled or liable to same." Iowa Code § 2525 (1873). This statute is currently codified in nearly identical form in chapter 611 of subtitle 3 of Title XV, which deals with civil procedure: "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code § 611.20 (2005).

The 1851 Code also addressed the abatement of suits already filed: "Actions do not abate by the death, marriage, or other disability of either party . . . if from the nature of the case the cause of action can survive or continue." Iowa Code § 1698 (1851). The contemporary counterpart of this statute is also found in chapter 611 and states in relevant part: "Any action contemplated in sections 611.20 and 611.21 may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased." Iowa Code § 611.22 (2005). Importantly, the limiting phrase, "if from the nature of the case the cause of action can survive or continue," is no longer part of the statute.

It appears that, beginning with the 1873 Code, a special survival statute governed appellate cases. *See* Iowa Code § 3211 (1873). The original language of section 3211 has been carried forward to the current survival statute governing appellate court procedure, which provides: "The death of one or all of the parties shall not cause the proceedings to abate, but the names of the proper persons shall be substituted . . . and the case may proceed." Iowa Code § 625A.17 (2005). It is this statute upon which the appellant relies to resist the State's motion to dismiss this appeal.

A reading of the straightforward language of the current statutes would lead one to conclude that no civil claim or action abates upon the death of a party. Nonetheless, this court has long held that civil claims or actions personal to the decedent are extinguished by the decedent's death. *See Jahnke v. Jahnke*, 526 N.W.2d 159, 162 (Iowa 1994) (holding death of adoptive parent abated action to vacate adoption notwithstanding section 611.20); *AFSCME/Iowa Council 61 v. Iowa Dep't of Pub. Safety*, 434 N.W.2d 401, 405 (Iowa 1988) (noting rule that cause of action "personal to the decedent" does not survive, but holding rule did not apply under circumstances of that case); *State ex rel. Turner v. Buechele*, 236 N.W.2d 322, 324 (Iowa 1975) (holding survival statute did not prevent abatement of civil action "where the subject matter of the controversy [was] personal to the decedent"); *Babbitt v. Corrigan*, 157 Iowa 382, 383, 138 N.W. 466, 467 (1912) (acknowledging the predecessor statute to section 625A.17, yet dismissing appeal of suit seeking only "injunctional and penal" relief, noting death had enjoined the defendant). While the basis for this court-made exception is not entirely clear, it appears to have been carried over from Iowa's original survival statutes that provided for survival only "if from the nature of the case the cause of

action can survive or continue," Iowa Code § 1698 (1851), or "[u]nless from the necessity of the case," the cause of action must die with a party, Iowa Code § 2502 (1851).

In *Barney v. Barney*, 14 Iowa 189 (1862), this court considered the 1851 statute that saved claims from abatement "if from the nature of the case the cause of action can survive or continue." *Barney*, 14 Iowa at 192. In that case, a wife obtained a divorce decree dissolving her marriage. *Id.* at 191. The wife died shortly after entry of the decree, and the husband thereafter appealed. *Id.* We concluded that with respect to the dissolution of the marital relation the appeal could not proceed:

> The marital relation is personal in its character, and a proceeding to dissolve this relation is personal. . . . From the nature of the case, in so far as this proceeding related to the divorce, the cause was ended by the death of the complainant. It could not be revived, because there was nothing to survive, death itself having settled the question of separation beyond all controversy.

*Id.* at 193.

Notwithstanding the absence of qualifying language in later versions of the 1851 statutes, this court continued to apply this commonsense exception to survival—that when the death of a party makes any relief ineffectual, survival statutes do not save the proceeding. *See Jahnke*, 526 N.W.2d at 162; *Buechele*, 236 N.W.2d at 324; *Babbitt*, 157 Iowa at 383, 138 N.W. at 467. At first blush, it is difficult to reconcile the holding of these cases—that actions personal to the decedent abate—with the all-encompassing, unqualified language of the survival statutes—that "[a]ll causes of action survive" and "[t]he death of one or all of the parties shall not cause the proceedings to abate." Iowa Code §§ 611.20, 625A.17 (2005); *see also Wendelin v. Russell*, 259 Iowa 1152, 1156, 147 N.W.2d 188, 191 (1966) (stating survival statutes are to

be liberally construed), *overruled on other grounds by Lewis v. State*, 256 N.W.2d 181, 189, 192 (Iowa 1977). We conclude, however, that our cases are not inconsistent with the survival statutes when these cases are viewed as applications of the mootness doctrine.

A case is moot when the contested issue has become academic or nonexistent and the court's opinion would be of no force or effect in the underlying controversy. *In re M.T.,* 625 N.W.2d 702, 704 (Iowa 2001). Our cases abating actions personal to the decedent meet this test. For example, in *Buechele,* the relief sought—removal of the defendant supervisor from office—was impossible as the defendant's death effectively removed him from office. 236 N.W.2d at 324. Similarly, in *Babbitt,* the relief sought—an injunction prohibiting the defendant from selling intoxicating liquors—became unnecessary when the defendant's death terminated his ability to make the offensive sales. 157 Iowa at 384, 138 N.W. at 467.

Courts in other states have observed that survival statutes providing that causes of action or suits do not abate upon the death of a party do not dispense "with the requirement that there be an actual existing controversy between the litigants." *Olson v. Comm'n for Lawyer Discipline*, 901 S.W.2d 520, 523 (Tex. App. 1995); *accord In re L.W.*, 861 N.E.2d 546, 551 (Ohio Ct. App. 2006) (holding survival statute did not operate to except suits from the mootness doctrine). As one court has observed, "The real point is not abatement of the appeal but whether the question has become moot . . . ." *Mason v. Commonwealth*, 283 S.W.2d 845, 846 (Ky. Ct. App. 1955); *accord In re Storar,* 420 N.E.2d 64, 66–67 n.1 (N.Y. 1981) (noting existence of survival statutes, yet holding issue posed by death of the ward was "properly resolved by consideration of the principles applicable to moot controversies"), *superseded by statute on*

*other grounds as noted in In re M.B.*, 846 N.E.2d 794, 796 (N.Y. 2006). We agree with the Kentucky court's observation and confirm what has been implicit in our cases—that although an action does not abate upon the death of a party, as provided by our survival statutes, the case must still present a justiciable controversy in order to proceed. *See AFSCME/Iowa Council 61*, 434 N.W.2d at 405 (holding death of plaintiff did not abate action to obtain plaintiff's blood test results in part because the issues giving rise to the request for the results "were not mooted by [the plaintiff's] death").

Turning to the present case, we conclude Maghee's cause of action survived his death pursuant to section 611.20. *See* Iowa Code § 611.20 (2005) ("All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same."). In addition, his appeal survives. *See id.* § 625A.17 ("The death of one or all of the parties shall not cause the proceedings to abate . . . ."). Therefore, we reject the State's contention that Maghee's death abates this proceeding.

This conclusion does not, however, end our inquiry. We must still consider whether this appeal is academic and whether our decision will have any effect on the underlying controversy. The mootness of this controversy is clearly demonstrated when one focuses on the relief ultimately sought by Maghee—immediate release on parole. Any decision we make has been rendered ineffectual by his death. Maghee's death has already ended his imprisonment and rendered release impossible. Therefore, this case is moot. *See In re Sodersten*, 53 Cal. Rptr. 3d 572, 609 (Cal. Ct. App. 2007) (holding issues raised in petition for writ of habeas corpus became moot upon death of habeas petitioner).

Maghee's attorney urges us to apply the public-interest exception that permits the court to address moot controversies: "When the issue presented is of substantial public interest there exists a permissible exception to the general rule that a case which has become moot or presents only an academic question will be dismissed on appeal." *Bd. of Dirs. v. Green*, 259 Iowa 1260, 1264, 147 N.W.2d 854, 856 (1967); *see also Sodersten*, 53 Cal. Rptr. 3d at 610 (holding court has discretion to apply exception to mootness rule when habeas petitioner dies during pendency of proceeding). In determining whether we should exercise our discretion to review a moot action, we consider the following factors:

> (1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review.

*State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002); *accord Dittmer v. Baker*, 280 N.W.2d 398, 399 (Iowa 1979).

We have applied this test in cases similar to the one before us here. *See Rhiner v. State*, 703 N.W.2d 174, 177 (Iowa 2005); *In re M.T.*, 625 N.W.2d at 704–05; *Roth v. Reagen*, 422 N.W.2d 464, 466 (Iowa 1988); *Wilson v. Farrier*, 372 N.W.2d 499, 501 (Iowa 1985). In *Wilson*, an inmate challenged his prison discipline, but was paroled by the time the case reached our court. 372 N.W.2d at 500–01. We concluded the question of "the appropriate standard of judicial review in appeals from prison disciplinary committees" was "one of public importance" that warranted our consideration notwithstanding the mootness of the case. *Id.* at 500, 501. In *Rhiner*, an inmate filed an application for postconviction relief from revocation of his parole. 703 N.W.2d at 175–76. The inmate was again paroled by the time his case was heard in the

district court, so the district court not only denied his application on its merits, but alternatively dismissed it as moot. *Id.* at 176. In choosing to address the appeal on its merits, this court noted it had not previously considered the operation of the statute governing revocation of probation and parole and review may be elusive because inmates would often be released from imprisonment by the time the case reached the appellate courts. *Id.* at 177. Therefore, we concluded, the case fell squarely within the exception to the mootness doctrine. *Id.*

Like these cases, the present appeal presents an issue of general applicability that is likely to reoccur. Prisoners are transferred in and out of work release every day, and challenges to such transfers inevitably arise. Certainly, it is desirable to have an authoritative adjudication as to whether such challenges should be pursued as judicial review of agency action under chapter 17A or by filing a postconviction-relief action under chapter 822. Public officials as well as prisoners would benefit from such guidance. In addition, due to the effect of earned-time credits, work release, and parole, it is likely many actions similar to the one brought by Maghee could be rendered moot by the inmate's release prior to the resolution of an appeal, as occurred in *Wilson* and *Rhiner*. For these reasons, we conclude we should address the issue presented by this appeal under the public-interest exception to the mootness doctrine. Accordingly, we deny the State's motion to dismiss.

### III. Method of Challenge to Revocation of Work Release.

Maghee challenged the revocation of his work release by filing this postconviction-relief action. The district court dismissed his action on the State's motion, ruling the revocation should have been contested in an administrative appeal to the Iowa parole board. Based upon our review of prior case law and the current statutory scheme, we conclude a

postconviction-relief action is the proper vehicle to challenge the revocation of work release and resulting transfer to a secure facility.

We begin our discussion by recognizing the district court's ruling was entirely consistent with this court's decision in *Dougherty v. State,* 323 N.W.2d 249 (Iowa 1982). In that case, we considered "whether a revocation of . . . work release can be challenged by a postconviction action" and concluded the Iowa Administrative Procedure Act, chapter 17A, "provides the exclusive method for attacking the revocation." *Dougherty*, 323 N.W.2d at 249. Maghee claims this case is no longer good law because the statutory mechanism governing work release and its revocation has changed considerably.

We question whether *Dougherty* was correct when decided, but in any event we are confident it is no longer good law. To understand why *Dougherty* must be overruled, it is necessary to review our cases addressing the scope and interplay of Iowa's Administrative Procedure Act and other methods of obtaining relief from unlawful government action.

**A. Prior Case Law.** We start with *Allen v. State,* a case predating Iowa's adoption of the Administrative Procedure Act. *Allen v. State*, 217 N.W.2d 528 (Iowa 1974), *departed from as stated in Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984). In that case, an inmate filed a postconviction-relief action, asserting institutional disciplinary procedures violated his due process rights. *Id.* at 531. This court affirmed the district court's decision dismissing the prisoner's claim on the basis it was not properly raised in a postconviction action. *Id.* We noted the postconviction-relief statute was intended to provide a vehicle to challenge the validity of a " '*conviction or sentence.*' " *Id.* (emphasis added) (quoting Iowa Code § 663A.2 (1973) (now codified at Iowa Code

§ 822.2 (2009))). In contrast, prison discipline should be challenged by way of a habeas corpus action, we advised. *Id.*

Several years later, after enactment of chapter 17A, this court was asked to decide whether the contested case procedures outlined in that chapter applied to prison disciplinary proceedings. *See Langley v. Scurr*, 305 N.W.2d 418, 419 (Iowa 1981). In *Langley*, an inmate claimed prison officials failed to comply with the notice and hearing requirements of chapter 17A when they disciplined him for participating in a fracas at the prison hospital. *Id.* We held chapter 17A did not apply to prison disciplinary proceedings because contested cases included only those proceedings required by statute or the constitution " 'to be determined by an agency after an opportunity for an evidentiary hearing.' " *Id.* (quoting Iowa Code § 17A.2(2) (1981)). In rejecting the inmate's claim that chapter 17A required an evidentiary hearing, we summarily concluded: "We think the legislature did not include prison disciplinary committees within the definition of agencies under section 17A.2(1)." *Id.*

Shortly after our *Langley* decision, we decided *Dougherty*, a postconviction-relief action in which an inmate challenged the revocation of his work release. *Dougherty*, 323 N.W.2d at 249. At the time of the events giving rise to the action in *Dougherty*, a work release committee had the authority to revoke an inmate's work release. *Id.* at 250 (citing Iowa Code §§ 247A.3, .4 (1981)). With no analysis, we concluded the committee's revocation decision was "agency action" within the meaning of the Administrative Procedure Act. *Id.* (citing Iowa Code § 17A.2(1) (1981)). We distinguished *Langley*, in which we had held a prison disciplinary committee was not an agency under section 17A.2(1), on the basis that the work release committee was created by statute. *Id.* ("Because the work release committee is established by statute, it differs

from the prison disciplinary committee involved in *Langley* . . . .”). Having concluded that chapter 17A applied to the work release committee, we then considered whether the judicial review provisions of chapter 17A provided the *exclusive* means to challenge revocation of work release. *Id.* We pointed out that, by the terms of the act, its judicial review provisions were

> “the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of [such] agency action” except as expressly provided otherwise by another statute referring to chapter 17A by name.

*Id.* (quoting Iowa Code § 17A.19 (1981)). We held that, because the postconviction statute did not expressly negate the applicability of chapter 17A, chapter 17A provided “the exclusive means for challenging a chapter 247A work release revocation.” *Id.*

Two years later, this court again addressed the availability of the postconviction-relief statute as a means of challenging prison discipline. *See Davis*, 345 N.W.2d at 98. In *Davis*, an inmate contested a disciplinary sanction of thirty-six months in administrative segregation and the loss of other privileges in a postconviction action notwithstanding the *Allen* decision holding that prisoners could not use postconviction-relief actions to challenge prison discipline. *Id.* Although the postconviction-relief statute had been amended after *Allen* to encompass a prisoner’s claim that the department had “unlawfully forfeited” the inmate’s good-time credits, the State argued disciplinary proceedings that did not involve the forfeiture of credits, such as the one at issue in *Davis*, could not be challenged in a postconviction-relief action. *Id.* (quoting Iowa Code § 663A.2(6) (1983) (now codified at Iowa Code § 822.2(1)(*f*) (2009))). The inmate argued his claim was

encompassed in subsection (5) of section 663A.2, which allows "postconviction review if the convicted person 'is otherwise unlawfully held in custody or other restraint.'" *Id.* at 99 (quoting Iowa Code § 663A.2(5) (1983) (now codified at Iowa Code § 822.2(1)(*e*) (2009))). Acknowledging that subsection (5) existed at the time of this court's decision in *Allen,* we concluded nonetheless

> that substantial reasons exist for departing from the position taken in *Allen* with respect to postconviction review of the actions of prison officials which involve a substantial deprivation of liberty or property rights.

*Id.* The primary reason for our decision to overrule *Allen* was this court's belief that "[i]t would be unwieldly [sic] to require separate actions and different procedures to review prison disciplinary proceedings depending on the type of punishment imposed." *Id.* We held, therefore, that disciplinary challenges "involving substantial deprivation of liberty or property interests" should be litigated in postconviction-relief actions. *Id.*

The final decision of relevance here is *Drennan v. Ault,* 567 N.W.2d 411 (Iowa 1997). In *Drennan,* an inmate serving time for operating while intoxicated (OWI) was placed in a community-based corrections program. 567 N.W.2d at 412. After the inmate violated a number of institutional rules, he was transferred to a secure facility. *Id.* The inmate brought a postconviction-relief action challenging the procedures employed by the department of corrections. *Id.* Citing our *Davis* decision, we observed: "Both parties agree Drennan's appeal is properly reviewable as a postconviction action." *Id.* at 413 (citing *Davis,* 345 N.W.2d at 99). Our citation to *Davis* implies that we considered the disciplinary proceeding in *Davis,* in which the inmate's violation of an institutional rule resulted in the inmate's administrative segregation, the same as, or analogous to, the proceeding in *Drennan,* in which the inmate's violation of

institutional rules resulted in the inmate's transfer to a more secure setting.

With these cases in mind, we now consider whether Maghee's challenge to his transfer is properly reviewed in a postconviction action under chapter 822.

**B. Applicability of Postconviction-Relief Provisions of Chapter 822.** Maghee argues that, since our decision in *Dougherty*, the mechanism for revocation of work release has changed, undermining the basis for our decision in that case. Now, the department of corrections is responsible for termination of work release "in accordance with rules of the department." Iowa Code § 904.903 (2003). Under the department's rules, such transfer decisions are made using the same procedure as that for transfer of OWI offenders in community-based programs. *See* DOC Policy WR/OWI–42 (2006) (providing for "structured classification process to remove/transfer offenders from Work Release, OWI and Pre-Placement programs to an institution setting"). As illustrated by *Drennan* and this case, transfer decisions for prisoners in work release or community-based correctional programs are often triggered by rule violations. *See also* Iowa Code § 904.513(1)(*b*)(4) (2003) (stating that assignment of OWI violators may be made "as a disciplinary measure"). In this respect, there is little to distinguish the nature of a proceeding resulting in transfer under DOC Policy WR/OWI–42 and a disciplinary proceeding resulting in administrative segregation, as occurred in *Davis.*

We think the following observation in *Davis* is now equally applicable to proceedings resulting in the transfer of an inmate from work release to a secure institution: "It would be [unwieldy] to require separate actions and different procedures to review prison disciplinary proceedings depending on the type of punishment imposed." *Davis*, 345

N.W.2d at 99. There is simply no principled reason to distinguish a transfer from work release to a secure institution from a transfer from the general prison population to segregation when both are based on rule violations. Surely if the latter transfer decision falls within section 822.2(5) (2003), providing for postconviction review if the convicted person "is otherwise unlawfully held in custody or other restraint," as we held in *Davis*, then the transfer decision at issue in this proceeding does as well. While it is true transfers from work release and community-based correctional programs can occur for reasons other than a disciplinary one, *see* DOC Policy WR/OWI–42 (listing reasons for transfer, including a mental condition that cannot be managed in work or community release), we think a more manageable and consistent review process results when all transfer decisions are subject to the same postconviction-relief method of review. *Cf. Davis*, 345 N.W.2d at 99 (noting desirability of using same review procedure for all disciplinary proceedings).

The State argues that *Davis* cannot be applied here because "work release decisions do not implicate a substantial liberty or property interest." *See id.* at 99 (holding disciplinary challenges "involving substantial deprivation of liberty or property interests" may be litigated in postconviction-relief actions). The State points out that this court has held a prisoner transferred from a community-based correctional program to prison has "no due process liberty interest." *Drennan*, 567 N.W.2d at 414. The State's argument confuses the ultimate merits of Maghee's claim with his right to present his claim. In this appeal, we address only the proper vehicle for Maghee's challenge to the department's decision to transfer him from work release to secure confinement. Whether his challenge has any merit is a different

question.  *Cf. Lewis Cent. Educ. Ass'n v. Iowa Bd. of Educ. Exam'rs*, 625 N.W.2d 687, 692 (Iowa 2001) (noting chapter 17A subjects nearly all agency action to judicial review, but " '[s]uccess on the merits in such cases . . . is another thing' " (emphasis omitted) (quoting Model State Admin. Procedure Act § 1–102(2) cmt. (1981))).

**C. Exclusivity of Chapter 17A.**  We now address the State's argument that, even if a work-release transfer decision falls within the scope of chapter 822, inmates subject to such decisions must follow the judicial review procedure of chapter 17A.  The State cites to our discussion in *Dougherty* that chapter 17A is the exclusive vehicle for review of agency action "except as expressly provided otherwise by another statute referring to chapter 17A by name," and our conclusion that the postconviction statute does not contain an express reference to chapter 17A.  323 N.W.2d at 250 (citing Iowa Code § 17A.19 (1981)).

Maghee responds that the internal committee responsible for transfer decisions is outside the scope of chapter 17A, just like the disciplinary committee in *Langley*.  In *Langley*, we summarily concluded chapter 17A did not apply to disciplinary proceedings because prison disciplinary committees were not agencies as defined in chapter 17A. 305 N.W.2d at 419.  We choose not to rely on *Langley* and its unsupported conclusion.[3]  Instead, we are convinced the exclusivity

_____

[3]Chapter 17A defines an "agency" to include a "unit of the state."  Iowa Code § 17A.2(1) (2003); *see also id.* § 904.102 (establishing the department of corrections). "Agency action" includes any agency decision, proceeding, investigation, or sanction. *Id.* § 17A.2(2); *see also id.* §§ 904.108(1)(*k*) (placing duty on director of department to adopt rules for the internal management of institutions), .505 (providing guidelines for discipline of inmates for violation of rules of institution).  Finally, section 17A.23 states that "[t]his chapter shall also be construed to apply to all agencies not expressly exempted by this chapter."  Given these provisions, it is difficult to understand the basis for holding that a disciplinary decision made by a committee of the department of corrections is not agency action falling within chapter 17A.  The fact that disciplinary proceedings are not "contested cases," *see Langley,* 305 N.W.2d at 419, does not preclude their review under chapter 17A.19 as "other agency action."  *See Jew v. Univ.*

provisions of chapter 17A do not prevent an inmate from challenging the department's transfer decision in a postconviction-relief action.

Since our *Dougherty* decision, we have taken a less rigid view of the exclusivity provisions of chapter 17A. There are three references in chapter 17A to exclusivity, and we address each separately.

1. *Section 17A.1(2).* Section 17A.1(2) contains a statement of purpose that provides in relevant part:

> This chapter is meant to apply to all rulemaking and contested case proceedings and all suits for the judicial review of agency action that are not specifically excluded from this chapter or some portion thereof by its express terms or by the express terms of another chapter.

Iowa Code § 17A.1(2) (2003). In *Jew v. University of Iowa,* 398 N.W.2d 861 (Iowa 1987), we held:

> Section 17A.1(2) is susceptible of an interpretation that, where actions for judicial review of agency action are in fact brought, they shall be maintained in accordance with the provisions of section 17A.19. It does not speak to the issue of exclusivity.

398 N.W.2d at 865. Therefore, section 17A.1(2) does not prevent Maghee's pursuit of a postconviction-relief action.

2. *Section 17A.19.* This section outlines the judicial review process and contains the following statement:

> Except as expressly provided otherwise by another statute referring to this chapter by name, the judicial review provisions of this chapter shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action. However, nothing in this chapter shall abridge or deny to any person or party who is aggrieved or adversely affected by any agency action the right to seek relief from such action in the courts.

---

*of Iowa,* 398 N.W.2d 861, 864 (Iowa 1987) (noting judicial review provisions of section 17A.19 apply to contested case hearings, rule making and other agency action).

Iowa Code § 17A.19 para. 1 (2003). We considered the effect of this provision in *City of Des Moines v. City Development Board*, 633 N.W.2d 305 (Iowa 2001).

In that case, the City of Des Moines had sought judicial review of a decision of the City Development Board to stay proceedings on an annexation petition filed by the city. *City of Des Moines*, 633 N.W.2d at 307. The district court determined the city's petition for judicial review was timely filed, but dismissed the petition for failure to exhaust administrative remedies. *Id.* at 309. On appeal, the timeliness of the city's filing depended on whether the judicial review provisions found in chapter 17A or the conflicting provisions in Iowa Code chapter 368 controlled. *Id.* at 309–10. Chapter 368 creates the City Development Board and also contains a set of provisions for judicial review of board decisions that are to be applied together with chapter 17A judicial review provisions. *Id.* at 310 (citing Iowa Code § 368.22 (1997)). In concluding chapter 368 controlled, this court relied on the principle that, when two pertinent statutes cannot be harmonized, the court will apply the statute that deals with the subject "in a more definite and minute way," as opposed to a statute that "deals with [the] subject in a general and comprehensive manner." *Id.* at 311. Applying this principle, we held that chapter 368, as the more specific statute, governed. *Id.* at 312. We acknowledged the language of section 17A.19, quoted above, but concluded "there is no indication our legislature intended to make section 17A.19(3) controlling." *Id.*

While the conflict here between chapter 17A and chapter 822 is more comprehensive than the conflict considered in *City of Des Moines*, we think the analysis should be the same. As we discussed above, Maghee's claim falls within chapter 822, allowing review of the

department's transfer decision in a postconviction-relief action. Even though the department's decision may also fall within chapter 17A, we think the more specific statute—chapter 822—should control the procedure for judicial review. The legislature provided for postconviction review of specified claims, some of which could only arise from agency action by the department. *See* Iowa Code § 822.2(6) (2003) (providing for postconviction review of claims that earned-time credits were unlawfully forfeited) (now codified at Iowa Code § 822.2(1)(*f*) (2009)). If we were to conclude that chapter 17A provided the exclusive means to obtain review of agency action by the department, we would render subsection (6) a nullity. We do not believe the legislature intended such a result by its enactment of section 17A.19. *See* Iowa Code § 4.4(2) (2009) (stating presumption that in enacting a statute, legislature intends the entire statute to be effective); *see also Hanover Ins. Co. v. Alamo Motel*, 264 N.W.2d 774, 778 (Iowa 1978) ("We cannot presume the legislature intended to enact a futile or ineffectual law or one that would lead to absurd consequences."). Nonetheless, before we conclude that chapter 822 provides the method for review of agency action falling within its terms, rather than chapter 17A, we must consider the last provision in chapter 17A that talks about the exclusivity of that chapter.

3. *Section 17A.23.* Section 17A.23 addresses the construction of chapter 17A, stating in relevant part:

> Except as expressly provided otherwise by this chapter or by another statute referring to this chapter by name, the rights created and the requirements imposed by this chapter shall be in addition to those created or imposed by every other statute in existence on July 1, 1975, or enacted after that date. If any other statute in existence on July 1, 1975, or enacted after that date diminishes a right conferred upon a person by this chapter or diminishes a requirement imposed upon an agency by this chapter, this chapter shall take precedence unless the other statute expressly provides

that it shall take precedence over all or some specified portion of this named chapter.

The Iowa administrative procedure Act shall be construed broadly to effectuate its purposes. This chapter shall also be construed to apply to all agencies not expressly exempted by this chapter or by another statute specifically referring to this chapter by name; and except as to proceedings in process on July 1, 1975, this chapter shall be construed to apply to all covered agency proceedings and all agency action not expressly exempted by this chapter or by another statute specifically referring to this chapter by name.

Iowa Code § 17A.23 paras. 1–2 (2003).

In *Jew*, we considered whether a sex discrimination claim against the University of Iowa could be pursued under our state civil rights statute, Iowa Code chapter 601A (1985) (now codified at Iowa Code chapter 216 (2009)), as an original action in district court or whether chapter 17A provided the exclusive means of review of the university's actions. 398 N.W.2d at 863. We rejected the defendants' contention that,

in claims based on action by state agencies, [section 17A.23] create[s] a conclusive presumption of the exclusivity of the chapter 17A judicial review procedure over all other statutory remedies, unless the competing legislation has negated application of [chapter 17A] by specific reference somewhere in its provisions.

*Id.* at 864. We observed that the exclusivity of chapter 17A "as a means of assailing acts or omissions of administrative agencies, must necessarily vary, based on the context of the transaction." *Id.* We held that, with respect to "other agency action" in particular, "the lines of exclusivity are not as rigidly drawn as defendants' argument suggests." *Id.* We concluded

that where, as in the present case, the action challenged bears scant relation to the agency's statutory mandate or supposed area of expertise, agency employees should enjoy the same right to pursue matured statutory causes of action

as other employees. This is particularly true where public employees are expressly included as beneficiaries of the enabling statute in its definitional provisions.

*Id.* We distinguished our decision in *Dougherty*, noting in that case "the action challenged was the very decision which the agency's mandate directed it to make." *Id.* at 865.

As for the exclusivity provisions, we concluded our decision to allow the plaintiff to pursue an original action in the district court under the civil rights act based on actions of a state agency did not run "counter to the 'specific reference' mandates of . . . section 17A.23." *Id.* Focusing only on the first paragraph of section 17A.23, we reasoned:

> Section 17A.23 also talks around the subject of exclusivity, except with regard to statutes diminishing rights conferred upon a person by chapter 17A. No suggestion has been made in the present case that section 601A.16(1) or any other provision of chapter 601A serves to "diminish" plaintiff's rights under chapter 17A.

*Id.*

We did not discuss the second paragraph of section 17A.23 in *Jew*. We did, however, consider the meaning of the second paragraph in a later case. In *Lewis Central Education Association,* we construed the second paragraph as addressing the unreviewability of agency action: "Under the Iowa act, there is clearly no room for a presumption of unreviewability; any exception under our act must be express and specifically name the act." 625 N.W.2d at 691 (referring to section 17A.23).

Based on our construction of section 17A.23 in *Jew* and *Lewis Central Education Association,* we are convinced that allowing postconviction review of disciplinary decisions of the department of corrections, whether the resulting discipline is the forfeiture of earned-time credits, administrative segregation, or transfer out of a work release

or other community program, does not contravene that statute. The decisions of the department are certainly not rendered unreviewable by allowing review under chapter 822 rather than chapter 17A. Moreover, Maghee does not claim that any provision of chapter 822 diminishes his rights under chapter 17A. And finally, it would violate our rules of statutory construction to conclude that chapter 822 encompasses no agency action notwithstanding its express provisions making agency action subject to chapter 822 review procedures. We recognize disciplinary decisions are within the mandate of the department of corrections, a factor deemed important in *Jew.* Nonetheless, this fact does not outweigh the other factors that support our conclusion that chapter 822, not chapter 17A, provides the method of review for decisions falling within section 822.2.

For these reasons, we find no basis to distinguish Maghee's claim from those asserted in *Drennan* and *Davis* with respect to the appropriate method to challenge the department's transfer decision. Therefore, we overrule our *Dougherty* decision, hold Maghee properly sought review through a postconviction-relief action, and reverse the district court's contrary decision dismissing Maghee's petition on this basis.

### IV. Disposition.

Having decided the district court erred in dismissing this action on the ground Maghee could not challenge his transfer back to prison in a postconviction-relief action, we must now determine the appropriate disposition of this appeal. If Maghee were still alive, the case would be remanded for a decision on the merits of his petition. We have already determined, however, that this case is moot. We must, therefore, consider whether we should invoke the public-interest exception and

remand the claims raised by Maghee in his petition for resolution by the district court.

Maghee filed a prolix pro se petition. Reduced to its essentials, the petition alleges his transfer was motivated by a desire to deprive him of a limousine business he had formed while on work release, which he contends was not a proper ground for sending him back to prison. He also alleges he was denied a hearing in violation of the Fourteenth Amendment.

We find no basis for applying the public-interest exception to the issues raised in Maghee's petition. As for the first issue regarding the factual basis for his transfer, this issue is of a purely private nature that does not warrant consideration under an exception to the mootness doctrine. As for his due-process claim, authoritative guidance on this issue already exists. *See Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669–70 (8th Cir. 1996) (holding prisoner who was transferred from work release program to residential treatment center had no constitutionally protected liberty interest in remaining in the work release program and therefore no due-process right to a pretransfer hearing); *Drennan*, 567 N.W.2d at 414 (holding inmate had no liberty interest in remaining in community-based correctional program and therefore had no due-process right to a hearing). For these reasons, we decline to exercise our discretion to apply the public-interest exception to the mootness doctrine. Because there is no viable claim remaining to be addressed by the district court, we do not remand this case for further proceedings.

**REVERSED.**

All justices concur except Baker, J., who takes no part.